626 So.2d 759 (1993)
Maria Cruz GONGORA and Maricruz Hernandez
v.
Linda L. SNAY, American National General Insurance Company, and State Farm Mutual Automobile Insurance Company.
No. 93-CA-322.
Court of Appeal of Louisiana, Fifth Circuit.
October 26, 1993.
Writ Denied January 28, 1994.
*760 Daniel B. Snellings, James Minge, James Minge & Associates, New Orleans, for plaintiffs/appellants Maria Cruz Gongora and Maricruz Hernandez.
Camilo K. Salas III, Valerie A. Welz, Sessions & Fishman, New Orleans, Roger J. Larue, Metairie, for defendants/appellees Linda L. Snay and State Farm Mut. Auto. Ins. Co.
Before GAUDIN, GOTHARD and CANNELLA, JJ.
CANNELLA, Judge.
Plaintiffs, Maria Cruz Gongora (Gongora) and Maricruz Hernandez (Hernandez), appeal from the judgment rendered against defendants, Linda Snay (Snay) and State Farm Mutual Automobile Insurance Company, because the amounts awarded were too low. For the reasons which follow, we affirm.
On September 30, 1988, Hernandez, was operating a 1984 Toyota pick-up truck on Whitney Avenue at its intersection with Belle Chasse Highway. Gongora, the mother of Hernandez, was a guest passenger. The vehicle was stopped at a traffic light when it was hit in the rear, left corner by a 1982 Pontiac driven by Snay. It is undisputed that Snay was the sole and proximate cause of the accident. As a result of the collision, plaintiffs allegedly suffered injuries to their low backs and necks, were treated the day of the accident at the emergency room of Meadowcrest Hospital and were released. Plaintiffs saw various doctors over the next several years. In 1991, Gongora underwent a spinal fusion and Hernandez underwent a lumbar medial branch neurotomy at four levels.
Plaintiffs sued defendants to recover for the injuries that they had sustained.[1] The *761 case was tried before a jury on April 15, 1992 and a verdict was returned in favor of Hernandez for $304.24 and Gongora for $350.71, the amounts spent at the hospital emergency room. Thereafter, the trial judge granted a Judgment Notwithstanding the Verdict (JNOV), for the limited purpose of awarding each plaintiff $500 in general damages.
Plaintiffs appeal, assigning four errors. First, they contend that the trial court erred in allowing defendants to cross-examine plaintiffs and a witness concerning prior accidents, lawsuits and injuries. Second, they argue that this evidence unfairly prejudiced the jury against them, causing the very low damage awards. Third, plaintiffs argue that the amount awarded is so low that it constitutes clear error in both the jury verdict and the JNOV. Fourth, they argue that the trial judge erred in charging the jury on the weight which may be given pleadings from another lawsuit, because those pleadings should not have been admitted.
Defendants contend that admission of the previous lawsuits and injuries was proper, because it was not admitted solely to prejudice the plaintiffs, but rather was relevant in showing the plaintiffs' pre-existing physical conditions and contradictory statements. It showed their lack of credibility. Defendants also argue that where the plaintiffs' injuries were strenuously contested the jury charges were an accurate reflection of the law and, accordingly, the jury verdict was appropriate under the circumstances of this case.
The accident occurred on September 30, 1988 and Hernandez had been in another accident in April of that same year in which she had suffered back and neck injuries. She had last seen a doctor concerning these prior injuries, just four days before this accident, on September 26, 1988. Following this accident, she was treated at the Meadowcrest Hospital emergency room and was released. She thereafter saw Dr. Klainer, a different doctor than the one she was seeing for the April injury. She visited Dr. Klainer's office five times, complaining of back and neck pains. The last examination was negative and the MRI results showed no problems. Dr. Klainer discharged Hernandez. Thereafter, she made an appointment with Dr. Friedman, complaining that she was still in pain and that Dr. Klainer was not helping her. She kept the next appointment with Dr. Friedman in May of 1989, but then missed her July appointment. Dr. Friedman did not find any objective evidence to corroborate the complaints of pain. Hernandez testified that he was not helping her because he was only telling her to take Tylenol, which did not stop the pain. She then started going to a chiropractor, Dr. VanWormer. She went to him for several months but did not feel like she was getting relief. During this time, in July of 1989, she suffered another fall, injuring her elbow and hip. She then went to Dr. Leclercq in December of 1989. He reviewed her MRI results and did not find a problem. She thereafter returned to Dr. Friedman for more visits and then went back to Dr. Leclercq in January of 1991, complaining of pain going down her right hip. Dr. Leclercq then recommended a lumbar facet arthrography, which revealed some facet joint problems, and he subsequently performed the lumbar medial branch neurotomy at four levels. However, Dr. Levy, the defense expert neurosurgeon, testified that it was not a procedure he would use, or that most neurosurgeons would use because of its unreliability. There was also evidence showing that when Hernandez filled out the forms at the various doctors' offices, she did not disclose information about previous injuries or pain in her back. It is from these actions that the jury could have found her less credible.
The evidence concerning Gongora was of a similar nature. She suffered a slip and fall accident in 1980, injuring her back and neck at that time. In 1986, she was involved in a rear end collision, where her back and neck were again injured. In 1988, after the rear-end collision which is the subject of this lawsuit, she again testified to pain in her back and neck. She went to several different physicians between the time of the accident in 1988 and the time on which she was operated in 1991. After the emergency room visit to Meadowcrest, she first went to Dr. *762 Klainer who had her undergo an MRI. It showed no significant abnormalities, no nerve impingement, but bulges that would be normal of a woman her age. There was no disc herniation evident in either the MRI or the CAT scan at that time. She went to Dr. Friedman in April and May of 1989 and then not again until June of 1990. Between May of 1989 and June of 1990 she went to Dr. Vanwormer. He testified that she was doing better although she verbally denied to him that she had any improvement. She first saw Dr. Leclercq, the neurosurgeon, in December of 1989. When he first tested her he found no objective evidence of any nerve impingement and diagnosed degenerative arthritis. However, in 1991 when she returned to him, he did find signs of nerve involvement. She showed evidence of impingement that was not shown previously in similar tests. She then went back to Dr. Friedman in May of 1991 for a EMG which was now positive. Finally, at this time, Dr. Leclercq recommended and performed a spinal fusion on Gongora. Defense counsel introduced evidence that Gongora hurt herself doing heavy gardening over a certain weekend. There was also evidence introduced showing that Gongora had not provided the doctors with information about her previous back injuries. Also, Dr. Gilmore, a chiropractor, testified that when he examined Gongora in 1980 after her slip and fall, he assessed that she would have a permanent partial spinal impairment rating of fifteen percent, the same rating that Dr. Leclercq gave her after the fusion.
Thus, there is ample evidence in the record to support a finding that plaintiffs were not seriously injured by the accident. Their credibility was called into question. The jury found that plaintiffs had not been seriously injured by the accident and returned a verdict giving them damages only for their emergency room bills. The trial judge who heard the case and had opportunity to observe the witnesses, granted the JNOV, but only to add an additional $500 as damages to each plaintiff's judgment.
Plaintiffs argue that, under the rules of evidence, other claims should have been excluded because of their prejudicial effect. The admission of evidence at trial is governed by the Louisiana Code of Evidence.
La.C.E. art. 402 provides:
All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not admissible.
La.C.E. art. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
In Daigle v. Coastal Marine, Inc., 482 So.2d 749 (La.App. 1st Cir.1985), relied on by plaintiffs, the court noted that Louisiana lacked jurisprudence that delineated the proper use of prior claims evidence. Then, citing McCormick's Handbook of Law of Evidence, the court held that the trial judge must balance the relevancy of the information against its prejudicial effect. In Daigle, the court excluded the evidence of the other claims, apparently admitted only to establish that plaintiffs were litigious, because its relevancy did not outweigh its prejudicial effect.
A close review of the record in this case indicates that it is distinguishable from Daigle in that the evidence of or reference to other accidents, injuries and lawsuits was not admitted solely for prejudicial effect. Rather, the evidence concerning plaintiffs' previous accidents was admitted to establish the plaintiffs' prior medical history. It showed that plaintiffs had injuries to their backs and necks, as were their complaints here, caused by other accidents. This information is relevant to the issues of causation and damages. The trial court properly held that its relevancy in this regard outweighed its prejudicial effect.
Likewise, the evidence of Hernandez's husband's other claim was properly used to impeach his testimony concerning the severity of her disability. La.C.E. art. 607 addresses the use of extrinsic evidence to attack a witness' credibility and provides, in pertinent part:

*763 D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
The husband testified that Hernandez was severely disabled and could perform few functions around the home. However, in his lawsuit in another case in which he was involved, he pled that he could not cut the grass and that his wife did. This was relevant evidence which contradicted Hernandez's testimony and the trial judge did not err in allowing defense counsel to bring it out.[2]
We feel constrained to point out that the extent of these references by defense counsel and the manner in which some comments were made was irrelevant, should not have been allowed by the trial court, and therefore error. It is proper to admit evidence to establish a relevant point. But, it is error to allow frequent, irrelevant references by defense counsel. The trial court is afforded wide discretion in striking the balance between relevancy and prejudicial effect, but it is impermissible to allow defense counsel to use the relevancy of the information to inflame the jury by unnecessary references. Such actions by defense counsel should be curtailed by the trial court. We have considered the totality of the evidence and how it was presented. We do not find, however, that these excessive references warrant a reversal of the jury verdict and the JNOV. In reviewing an error on appeal, reversal is not warranted unless the party alleging error shows that the error, when compared to the record in its totality, had a substantial effect on the outcome of the case. Neumeyer v. Terral, 478 So.2d 1281 (La.App. 5th Cir. 1985), writs denied, 481 So.2d 631 (La.1986). After reviewing the record in this case, we find that the evidence supports the jury verdict and the JNOV.
After reviewing the entire record, we cannot say that the jury was clearly wrong in its finding that plaintiffs were not seriously injured by the accident or that the jury's judgment in this regard was erroneously effected by the irrelevant comments concerning plaintiffs' other claims. Also, we do not find that the trial judge was clearly wrong in adding $500 to each plaintiff's damage award.
Accordingly, we affirm the judgments below in favor of plaintiffs, Hernandez, in the amount of $304.24 plus $500 and Gongora in the amount of $350.71 plus $500, against defendants, Snay and State Farm.
AFFIRMED.
NOTES
[1] American National General Insurance Co., plaintiffs' uninsured/underinsured motorist carrier was also included as a defendant in the action. However, because the judgment did not exceed the State Farm policy limits, American National was not cast in judgment.
[2] Plaintiffs' last assignment of error concerning the jury charge on pleadings from other lawsuits is found to be without merit in view of our holding that the evidence of the other accidents, lawsuits and injuries is relevant and admissible. In view of its admissibility, the trial judge acted properly in charging the jury concerning that evidence.