668 So.2d 1252 (1996)
Cynthia W. TRAMONTIN
v.
Dr. Cynthia A. GLASS and La. Medical Mutual Insurance Co.
No. 95-CA-744.
Court of Appeal of Louisiana, Fifth Circuit.
January 30, 1996.
*1254 Christopher T. Grace, Jr., Metairie, John J. Cooper, New Orleans, for Plaintiff-Appellant.
Stewart E. Niles, Jr., Patricia A. Bethancourt, New Orleans, for Defendants-Appellees.
Before BOWES, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.
This is an appeal by Cynthia Tramontin, plaintiff-appellant, from an adverse jury verdict in this medical malpractice action. For the following reasons we affirm the decision of the jury.
The basic facts are generally undisputed. In early 1990, plaintiff consulted Dr. Cynthia Glass, a plastic surgeon and defendant here, about breast augmentation surgery, and that surgery was performed on June 27, 1990. All of the experts described this standard outpatient procedure as follows. An incision about two inches long is first made under the breast. The surgeon then cuts the connecting tissue underlying the breast by working through this initial incision, and gradually creates a pocket into which the implant is to be inserted. As the work progresses, the breast is held up so that the surgeon can see into the cavity with a light and magnifying instrument. This is usually done by an assistant *1255 using a retractor rod which is inserted into the cavity, although some doctors manipulate the retractor themselves. Once the cavity is of the proper size and shape, the implant is inserted and the original incision is sewn up.
As the cutting of the underlying tissue within the cavity proceeds, blood vessels are, of course, severed and the resulting bleeding has to be stopped or the procedure cannot go forward. Several methods can be used to accomplish this, but the most common is the use of an electrocautery device. The functional part of this instrument is a pencil-like rod with a hot tip that when applied to the ends of blood vessels seals them and stops further bleeding.
In the present case, the cavity under the left breast had almost been completed when a blood vessel was severed. The surgeon applied the electrocautery device at the point of the bleeding where the underlying tissue and the overlying skin came together, but in the process of stopping the bleeding a hole was burned up through the skin at the point of contact. It was explained by the various experts that because burn wounds kill the tissue at the point of the injury, they do not heal. The surgeon here decided that the best course of treatment of the burn was to cut out the dead tissue, thus creating an oval hole with healthy tissue all around. She then sutured the sides of the oval together leaving an incision line on the surface of the skin which was reported in the surgical notes to be one and one-half to two centimeters long. A polyurethane coated silicone gel implant was next inserted and the original incision closed without further problems. The procedure on the right breast was unremarkable.
Dr. Glass testified that she was concerned that the burn wound and resulting need to excise tissue and sew up that wound might well endanger the success of the augmentation procedure. She was particularly concerned that if the burn area became infected, that infection might well contaminate the implant cavity. If this occurred, then the implant would probably have to be removed. After surgery plaintiff had left the clinic before the doctor had an opportunity to see her, so the doctor went to her house later that evening to discuss what had happened and to explain that the burn wound needed careful monitoring because of the potential consequences of an infection.
On June 28, the day after the surgery, Dr. Glass saw plaintiff at her office. At that time the burn incision looked fine, but a blister had developed a little ways from the lower end of the incision. The doctor concluded that this blister was the result of irritation by the surgical tape which had been applied over the wound. Plaintiff was advised to come back in about eight days for removal of the sutures, and she was seen again on July 9. On that visit the burn and blister wounds were noted to be healing slowly. During the evening of that same day plaintiff called the doctor to tell her that the upper portion of the burn incision had opened up. She was instructed to meet the doctor at the hospital, and the opened part of the wound was cleaned and re-closed. Two days later the wound looked good with minimum inflammation, and by July 18, the redness was minimal.
At a July 24 visit, it was noted that the lower part of the burn incision had healed very well, but the upper part had widened to one-half centimeter, probably due to stretching caused by the weight of the implant. By August 10, the scab over the blister had dropped off and that wound appeared healed. The lower part of the burn incision was healing well, but the upper part was still widened. At a visit of August 23, the report states that only a small scab remained. Plaintiff was advised to return in two to three weeks, but did not do so.
Plaintiff testified that by late August she had lost confidence in Dr. Glass and did not wish to see her further. She also said that by then she was depressed by the whole experience. A friend recommended that she see Dr. Edward Pitard, a dermatologist, and on September 12, she did so. This doctor testified that on that visit both the burn incision and the blister wound were exuding fluid and both appeared infected. He also noted that the upper end of the incision was opened. He cleaned both wounds and recommended that she clean them daily with peroxide and apply an anti-bacterial ointment. *1256 He further stated that the wounds were much worse than they appeared in the August 23 photographs taken by Dr. Glass on plaintiff's last visit to her. He said that plaintiff returned to him over two months later on November 28, and that the wounds had again worsened. He noted that the blister wound had gone deeper and that a sinus had developed which he thought might have gone through to the implant cavity. He again cleaned the wounds and recommended that she see a plastic surgeon of his acquaintance. He learned later that she had not made an appointment with this surgeon.
Eventually, in May of 1991, the malpractice insurer of Dr. Glass, Louisiana Medical Mutual Insurance Company, referred plaintiff to Dr. Colon, also a plastic surgeon. His examination revealed that both wounds were still exuding some fluid and that the sinus beneath the blister wound had indeed gone through to the implant cavity. He determined that the only reasonable course of treatment was to remove the implants and revise the scars from both wounds. The latter procedure involved cutting out the old scars so as to make a single elliptical wound and then sewing the edges together. The result was that plaintiff now has a three and one-half inch scar above her left breast. Dr. Colon also explained that the polyurethane covering on the implants bonds with the surrounding tissue, and that in this case he removed the silicon gel portion of the implants, but the linings were left in. He said that this was not a health problem and that eventually the polyurethane would be dissolved by the body.
In due course, a medical review panel was convened consisting of three plastic surgeons. After reviewing the matter, the panel unanimously determined that the evidence did not support the conclusion that Dr. Glass failed to meet the applicable standard of care. It noted in its reasons for the decision that the complication experienced by plaintiff could occur despite the best of care. It further noted that the burn was not an incident which could reasonably be expected by the physician and therefore was not a risk which should have been communicated to the patient prior to the procedure. The present suit followed.
At trial plaintiff sought to prove that the burn wound was due to some inadvertence on the part of Dr. Glass which fell below the requisite degree of care. Alternatively, she attempted to show that the doctor failed to warn her of the potential for a burn wound during the procedure, and had inserted polyurethane coated implants in spite of plaintiff's alleged request that only silicone implants be used. The jury found that the plaintiff had established the degree of care, knowledge and skill ordinarily exercised by plastic surgeons, but had failed to prove that the treatment rendered by Dr. Glass fell below that standard. It also found that the doctor had properly informed plaintiff of all known material risks associated with the surgery. Judgment was accordingly entered in favor of the doctor and her insurer. Plaintiff now appeals from that judgment.
Six assignments of error are urged. The first two concern the exclusion of certain evidence, the third relates to the refusal of the trial judge to give an instruction on res ipsa loquitur, the fourth relates to the jury interrogatories, and the last two assert that the jury's findings of no breach of the standard of care or the duty to warn were manifestly erroneous.
Plaintiff first urges that the trial judge erred in excluding evidence concerning a prior malpractice action against the doctor in which she was found liable. Article 402 of the Louisiana Code of Evidence provides that evidence which is not relevant is not admissible. In determining the relevancy of evidence, the trial judge is given wide discretion, and such determinations will not be disturbed on appeal absent a clear abuse of that discretion, Fisher v. River Oaks, Ltd., 635 So.2d 1209 (La.App. 5 Cir.1994). In regard to evidence of prior incidents, the general rule was well stated in Lee v. K-Mart Corp., 483 So.2d 609 (La.App. 1 Cir. 1985), as follows:
Thus, to be relevant the other accident should occur at substantially the same place and under substantially the same conditions and must be caused by the same or similar defect, danger, act or omission. *1257 Evidence of other accidents occurring at substantially different places or under different circumstances or conditions is irrelevant and inadmissible. (At 613)
The details of the prior accident sought to be introduced in the present case appear in Felice v. Valleylab, 520 So.2d 920 (La.App. 3 Cir.1987) In that matter Dr. Glass was a third year general surgery resident and was supervising Dr. Goodger, a family practice resident, during a circumcision procedure in February of 1984. The child was severely burned during the operation, which was performed using a Valleylab electrosurgical unit (ESU), the same type of machine as used in the present suit. Dr. Glass testified in the previous case that she had been taught to perform circumcisions with a scalpel, and that use of the ESU was a new technique which she thought would produce better results. The finding that she fell below the standard of care in that matter was based on her modifying a familiar technique without knowing all of the potential risks, and further in failing to consult with supervising personnel about such risks.
In the present case, although the same type of machine was being used, it was set on the coagulation mode, rather than on the cutting mode, as in the prior matter. Here, Dr. Glass was operating the machine herself, rather than supervising another surgeon. Further, the prior acts of negligence on her part were in trying out a new technique before ascertaining all of its risks, and in failing to consult her superiors beforehand. Here, the allegations were that she either negligently applied too much heat to the bleeding vessel, applied it for too long, or inadvertently touched the skin above that vessel with the instrument. Considering all of the dissimilarities between the two cases, we cannot say that the trial judge clearly abused his much discretion in ruling this evidence inadmissible.
Plaintiff's second allegation of error also concerns a ruling by the trial judge to exclude evidence. This evidence was that the malpractice insurer for Dr. Glass had paid Dr. Colon to remove the implants and perform a scar revision on plaintiff. Article 409 of our Code of Evidence precludes the admission of evidence that a party has paid for damage or loss for the purpose of establishing or avoiding liability. The article does not preclude such evidence when it is offered for another purpose. However, Article 403 further provides that even relevant evidence may be excluded if its prejudicial effect outweighs its probative value. In striking the balance between relevancy and prejudicial effect, again trial judges are afforded wide discretion and such rulings will not be set aside absent a clear abuse of that discretion, Gongora v. Snay, 626 So.2d 759 (La.App. 5 Cir.1993).
Plaintiff urged that payment of Dr. Colon's bills by the insurer was admissible to show potential bias in his testimony in the insurer's favor. The trial judge ruled that the prejudicial effect of this evidence, i.e. that the jury would infer an admission of liability by the insurer, outweighed the marginal probative value of showing a potential bias on the part of the doctor toward the insurer. We find nothing in either Dr. Colon's testimony or anywhere else in the record which would establish that the trial judge clearly abused his much discretion in balancing the interest of the parties, and we therefore let that ruling stand. We also point out that although the fact of payment of the doctor by the insurer was excluded, the judge did permit plaintiff's former husband to testify that the insurer had referred her to Dr. Colon for treatment. The jury was thus at least informed that there was some connexity between this doctor and the insurer.
In her third assignment, plaintiff urges that it was error for the trial judge not to instruct the jury on the doctrine of res ipsa loquitur. This doctrine was most recently discussed in Spott v. Otis Elevator Co. 601 So.2d 1355 (La.1992), as follows:
Res ipsa loquitur, as "a qualification of the general rule that negligence is not to be presumed," must be sparingly applied. Generally, it obtains when three requirements are met: 1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence on the part of the defendant; 2) the defendant *1258 had exclusive control over the thing causing the injury; and 3) the circumstances are such that the only reasonable and fair conclusion is that the accident was due to a breach of duty on defendant's part. (at 1362) (citations omitted)
All of the doctors who testified at trial agreed that the burn injury suffered by the plaintiff was an extremely rare occurrence. So rare, in fact, that they further agreed that there was no duty to warn plaintiff of such an unusual type of incident on the consent forms or otherwise. Dr. Henry Onken, plaintiff's expert, testified that in his opinion the burn occurred either because the overlying skin at the point of the bleeding was not lifted out of the way with the retractor while the blood vessel was being cauterized, or because the instrument was set at too high a temperature or was applied for too long a time.
Dr. Colon and Dr. Randolph Howes (plaintiff's designee on the medical review panel) both testified that the burn was an unforeseeable result which rarely occurs, but is possible, with the best of care. Neither was of the opinion that the present instance of the injury was due to any negligence on the surgeon's part. Dr. Howes further stated that the heat generated by the instrument to stop the bleeding was no doubt transmitted to the adjoining tissue with a resulting burn. He also stated that the setting of the device at the level of five on the scale of one to ten, with one being the lowest, was not unusually high and that he sometimes used it at the nine level. Dr. Glass testified that the skin above the bleeding area was not inadvertently allowed to drop down onto the instrument, as suggested by Dr. Onken. She also said that at no time did she apply the instrument for an improper period of time or at too high a setting. Simone Lewis, the operating room assistant, corroborated the she noted nothing unusual in the operation of the machine by Dr. Glass.
Given the above evidence, it is clear that the first requirement of the res ipsa loquitur analysis was not met. While it is true that the occurrence here was unusual, there was very considerable pertinent evidence to dispel an inference of negligence on the defendant's part. Similarly, the third requirement, that negligence be the only reasonable explanation for the injury, was also not met. Two experts testified that the procedure used by the defendant met all applicable standards of care, and that neither saw any act of negligence on her part which caused this injury. Dr. Howes said that the heat was simply dispersed in the skin tissue when the cautery was applied at the point of bleeding. The defendant stated the she ascribed the incident to the thinness of plaintiff's skin and the location of the bleeding vessel at the very top of the pocket.
We finally note that res ipsa loquitur is a rule applicable to circumstantial evidence cases. Where there is direct evidence to show what transpired, the rule has no applicability. In the present case, Dr. Onken testified that the burn was caused by allowing the overhanging skin to come down, or too high a setting, or prolonged application of the instrument. Dr. Glass testified that the skin was not allowed to come down, that the setting was proper, and that the application time was appropriate. Two experts agreed that the care rendered met all applicable standards and that the injury occurred through no fault of the surgeon. The evidence here was direct, and the task of the trier of fact was to weigh this evidence and determine what, more probably than not, actually transpired. Thus, res ipsa loquitur was not a doctrine applicable here.
Plaintiff next asserts that the trial court erred in not including in the jury interrogatories a question specifically addressing the issue of whether she consented to the use of polyurethane covered implants. We again initially note that under La.Code Civ.Pro., Art 1812, the trial courts have wide discretion both in determining whether to use special interrogatories and in framing the questions to be posed, Plumber v. State, DHHR, 634 So.2d 1347 (La.App. 3 Cir.1994). Absent some abuse of that discretion, the appellate courts will not set aside such determinations.
The factual background of this alleged error in the interrogatories is as follows. Plaintiff testified that she had become apprehensive about implants containing polyurethane *1259 from watching a television special. She further said that she had specifically told Dr. Glass that she did not want this type of implant, but later learned from Dr. Colon that such an implant was nonetheless used.
Dr. Glass testified that she did discuss various types of implants with plaintiff prior to the surgery, and that plaintiff had selected the polyurethane type. She produced, in corroboration of this version of events, a June 25, 1990, office visit notation which stated:
Ms. Tramontin is here to discuss augmentation mammoplasty again. She has decided she would rather have the polyurethane implants. I've discussed with her the problems with the tissue reaction and polyurethane coming off of the implant, however she is most concerned about capsular contracture and would like to have this particular type of implant.
The jury interrogatory relating to consent stated:
Do you find that Dr. Glass failed to inform Cynthia Tramontin of all known material risks associated with this breast augmentation surgery?
Plaintiff's apparent position is that this instruction did not properly address the question of whether she had consented to the polyurethane implants. We disagree.
The jury instruction on informed consent began by informing the jury that the question at issue was whether the patient was given sufficient information about the procedure to be performed so as to make an intelligent decision about undergoing that procedure. Obviously, a correct description of the procedure, here the use of polyurethane implants, is a necessary predicate to the issue of informed consent. Thus the jury was sufficiently informed that a preliminary factual question to be resolved by it was whether plaintiff knew what type of implants were to be used. Because the above interrogatory, which asked about the adequacy of warnings about material risks, could only be answered in reference to a correct description of the procedure, no prejudice resulted from not adding an additional question about whether the procedure had been properly explained in the first place. While such an interrogatory might have been used, we find no abuse of the trial court's discretion in not doing so.
The final two issues relate to whether the jury wrongfully decided the case in favor of the defendant as to negligence and the adequacy of the warnings given about material risks. Because the jury's decisions on these issues depended on factual findings, the standard of review to be applied by this court is whether those findings were manifestly erroneous or clearly wrong. In Stobart v. State through DOTD, 617 So.2d 880 (La.1993), this standard was reiterated as follows:
This court has announced a two part test for reversal of a factfinder's determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). (at 882)
Our initial inquiry is thus not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, id.
In the present matter, we have reviewed the entire record, and conclude that the factual determinations made by the jury had a reasonable basis in the evidence. In addressing plaintiff's prior assignments we have already discussed much of the evidence and testimony offered by both parties. We recapitulate briefly that Drs. Colon and Howes, both plastic surgeons, testified that the injury at issue, while not unknown, was extremely rare. Neither deemed it a risk which would reasonably be communicated to a patient and neither ever informed their own patients of it. Both also agreed that their review of the case indicated that the degree of care rendered by Dr. Glass met all applicable standards during the surgery and in treating the burn and blister wounds afterward. Both also agreed that the consent forms used, which made explicit references *1260 to scarring and infections as potential problems with the procedure, were more than adequate. Dr. Glass testified that she had also discussed the potential problems of Polyurethane implants and that plaintiff had selected that type. Plaintiff offered as her expert Dr. Onken who was of the opinion that the burn was caused by a negligent slip, excess heat, or prolonged contact. Dr. Glass testified that none of these factors were involved. Plaintiff points to yet other evidence, not discussed above, which she insists warranted judgment in her favor. She argues that during the post-surgical home visit, Dr. Glass admitted that the burn was her fault and that she had made a mistake. Similarly, she notes that her ex-husband testified that Dr. Glass made these same admissions to him during a telephone conversation the day after the surgery. However, Dr. Glass denied ever making any such statements. The doctor also denied speaking to plaintiff's ex-husband until over six months after surgery, and that phone call was recorded in her office notes. No such note appears for any date close to that of the surgery.
We agree that plaintiff offered evidence which might well have led to a different result. However, that is not the inquiry here. We are first called upon simply to determine whether the facts found by the jury were reasonable in light of the evidence presented. It is evident that in each of the above areas the jury found defendant's evidence more persuasive, and made factual findings accordingly. Because in our opinion those findings are based on a reasonable view of the evidence, we are precluded from setting aside those findings. We therefore must affirm the decision of the jury in favor of the defendant.
For the foregoing reasons, the judgment of the district court in favor of Dr. Cynthia Glass and her insurer, Louisiana Medical Mutual Insurance Company, is hereby affirmed.
AFFIRMED.