WICKER, J.,
dissents in part and concurs in part, 'with reasons.
HANS J. LILJEBERG, Judge.
| ¡.Plaintiff appeals the judgment of the trial court after a jury trial on the merits of her negligence action. For the following reasons, we amend the judgment and affirm as amended.

Procedural History

Plaintiff, Peggy Williams, filed a petition instituting a negligence action against defendant, Walgreens Louisiana Company, Inc. (“Walgreens”). Ms. Williams sued for damages including past and future pain, suffering and mental anguish; past and future medical expenses; loss of enjoyment of life and past and future lost wages.
The matter proceeded to trial before a 12-person jury. Upon conclusion of the trial, the jury returned a verdict in favor of Ms. Williams, awarding her damages in the amount of $1,000,000.00. The jury, finding comparative fault | ..¡between the parties and Ms. Williams’ son, assigned Walgreens 60% fault, Ms. Williams 35% fault and Derrick Williams 5% fault. The trial court thereafter entered judgment in favor of Ms. Williams in the amount of $600,000.00 together with legal interest from the date of judicial demand and costs.
Post-trial, Ms. Williams moved for a judgment notwithstanding the verdict and for post-trial discovery. After a hearing and in camera inspection of sales data produced post-trial by Walgreens, the trial court denied the JNOV and imposed a $7,500.00 sanction against Walgreens for discovery abuses.
Ms. Williams now appeals the judgments of the trial court.

Facts

Ms. Williams was an administrative worker for the Orleans Parish School Board before Hurricane Katrina struck the Gulf Coast in August 2005. Prior to the hurricane, she evacuated to Grand Prairie, Texas, with her grandson, sisters and elderly father. Upon returning to New Orleans, Ms. Williams, who suffers from high blood pressure and diabetes, began to feel ill and realized that she left her blood pressure medicine (Toprol) in Texas.
On June 10, 2006, Ms. Williams called the Walgreens pharmacy in Grand Prairie and transferred her prescription to the Walgreens pharmacy on Lapalco Boulevard in Gretna, Louisiana. At her request, Derrick Williams picked up his mother’s prescription using the drive-thru service. Unbeknownst to Ms. Williams, a Wal-greens’ employee gave Derrick another customer’s prescription of Zyprexa, a potent anti-psychotic medication.
After ingesting the Zyprexa, Ms. Williams began feeling more lethargic and unstable, but attended a relative’s baby shower hours later. She was unable to participate in the event and instead lay down in the bedroom complaining of fatigue and dizziness. Monique Carter, the mother of Ms. Williams’ grandson, ^checked on her shortly after and took her blood pressure.[1] Realizing it was too high, Ms. Carter suggested that Ms. Williams take another Toprol. When Ms. Carter reached into Ms. Williams’ purse to retrieve the prescription, she noticed that the name on the bottle was not Ms. *819 Williams’ and that Ms. Williams took the wrong medication.
Ms. Carter called Derrick to take Ms. Williams to the emergency room. At Mea-dowcrest Hospital, Ms. Williams had high blood pressure and was administered To-prol, which lowered her blood pressure. Once her blood pressure improved, Ms. Williams was released in the early morning hours on June 11.
Ms. Williams slept most of the day; but once awake, she complained of increased nausea, vomiting and numbness. Derrick took her to Touro Infirmary on June 12, when it was discovered that she suffered a stroke. Her physician, Dr. Evita Currie, admitted Ms. Williams and attended to her care. Ms. Williams suffered a second and third stroke in 2007 and 2008, which Ms. Williams contends was caused by the initial stroke. Ms. Williams alleged to have sustained disabling injuries, including left-sided neural deficits and paralysis as a result of the strokes.
Evidence of Zyprexa’s side effects including increased or decreased blood pressure and stroke was admitted at trial; however, Walgreens argued that Ms. Williams’ pre-existing conditions caused her initial stroke, and that a single 20mg Zyprexa did not. At trial, the jury heard testimony from Ms. Williams’ physicians, psychologists and experts. Walgreens rested without putting on a case. At the conclusion of the trial, the jury assigned primary liability to Walgreens.

Assignments of Error

On appeal, Ms. Williams asserts several assignments of error based upon the trial court’s failure to grant a judgment notwithstanding the verdict. Plaintiff also jRasserts that the trial court erred in failing to impose a larger monetary sanction based upon Walgreens’ sales data produced post-trial.

Discussion

Louisiana Code of Civil Procedure article 1811 governs a motion for judgment notwithstanding the verdict or JNOV. A JNOV may be granted on the issue of liability or on the issue of damages or on both. La. C.C.P. art. 1811(F).
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exeycise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Davis v. Wal-Mart Stores, Inc., 00-445 (La.11/28/00), 774 So.2d 84, 89; Scott v. Hospital Serv. Dist. No. 1, 496 So.2d 270 (La.1986).
The standard of review for a JNOV on appeal is a two part inquiry. In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether or not to grant the motion. After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review. Davis v. Fenerty, 04-283 (La.App. 5 Cir. 12/14/04), 892 So.2d 55, 58; *820 Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 832 (La.1991).

Verdict Calculations

In plaintiffs first assignment of error, Ms. Williams asserts that the judgment entered by the trial court is not in conformity with the jury verdict form. Specifically, plaintiff argues that the trial court erroneously reduced the jury’s | fiaward by 40%, where the verdict form reflects that the jury itself made the necessary calculations and reductions based upon their findings of comparative fault (i.e. her award was twice reduced by the trial court’s calculation). Accordingly, plaintiff asserts that the trial court erroneously failed to grant the'JNOV to award plaintiff $1,000,000.00 as opposed to $600,000.00.
In response, Walgreens maintains that the trial court properly determined that interrogatories seven and eight reflect the jury’s intent that plaintiff receive an award of $600,000.00. Further, Walgreens argues that plaintiffs failure to object to the verdict form and/or the jury instructions precludes plaintiff from raising the issue on appeal.
The pertinent interrogatories were listed on the jury verdict form as follows:
7. What percentages of fault do you assign to the following (any fault attributed to either Peggy Williams or Derrick Williams reduces any amount of damages awarded to Peggy Williams in Question 8 below by that percentage).
Walgreen Louisiana Co., Inc. 60%
Peggy Williams 35%-
Derrick Williams 5%
Total (must equal 100%) 100%
8. What amount of damages will compensate Peggy Williams for any injury or injures [sic] proximately ' caused by negligence of Walgreen Louisiana Co., Inc. or any of its employees?
$100,000 Past physical pain, suffering, and mental anguish
$270,000 Future physical pain, suffering, and mental anguish
$30,000 Past Medical Expenses
$600,000 Future Medical Expenses
$-0-Loss of Enjoyment of Life
$-0--Past Lost Wages
$-0-Future Loss of Earning Capacity
We note that in closing arguments, plaintiffs counsel and defendant’s counsel each went through the interrogatories with the jury. In addition, the trial court read the interrogatories to the jury prior to sending them out for deliberations. Finally, the jury asked four questions of the court during ^deliberations, none of which concerned the wording of jury interrogatory numbers seven or eight.
At the hearing on the JNOV, plaintiff presented the same argument to the trial court as she does on appeal. Specifically, *821 plaintiff argues interrogatory number eight, irrespective of interrogatory number seven, asks the jury what amount of damages will compensate Ms. Williams for injuries proximately caused by Walgreens only, not proximately caused by all parties. Accordingly, plaintiff argues the jury itself made'the necessary fault reduction prior to rendering the award and the $1,000,000.00 represents Walgreens’ liability alone. At the conclusion of the hearing, the trial court stated:
I think the trial was fair. I think the introduction of the evidence and the facts introduced to the jury, and particularly the arguments made by counsel were thoroughly examined and thoroughly argued. And I clearly understand where a jury could apportion fault as it did in this case.
I know that there was an argument with regard to the jury verdict form or the interrogatory form, and having reviewed that form, which is a form that the Court has consistently used and was approved by all counsel, I do not believe in any way that it misinformed or misled the jury into filling it out incorrectly.
... I believe that there is justification for the jury’s verdict based upon the testimony and the evidence that was introduced as [the jury was] impressed with it.
We initially note that under La. C.C.P. art. 1812, trial courts have wide discretion both in determining whether to use special interrogatories and in framing the questions to be posed. Tramontin v. Glass, 95-744 (La.App. 5 Cir. 1/30/96) 668 So.2d 1252, 1258. Absent some abuse of that discretion, the appellate courts will not set aside such determinations. Id. Further, pursuant to La. C.C.P. art 1793, “[a] party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which |she objects and the grounds of his objection.” In order to preserve the right to appeal a trial court’s failure to give a requested instruction or its giving of an erroneous instruction, a party must not only make a timely objection, but must state the grounds of the objection. Willis v. Ochsner Clinic Foundation, 13-627 (La.App. 5 Cir. 4/23/14) 140 So.3d 338, 348-49. The rule also applies to jury interrogatories. See Id. at 349 (where this Court prohibited review of defendant’s claim on appeal that interrogatories were unclear or confusing where it failed to make any such objection at trial).
Plaintiff argues that she is not objecting to the verdict form, but instead to the calculation of the trial court. However, the trial court’s calculation was directly based upon the verdict form to which plaintiff did not object.
Next, a plain reading of interrogatory number seven clearly represents to the jury that any fault attributed to either Peggy Williams or Derrick Williams will reduce any amount of damages awarded to Peggy Williams in interrogatory number eight by that percentage, i.e. making it clear that the amount of damages awarded by the jury in interrogatory number 8 must represent 100% of their award since it will be reduced by the percentages of fault assigned in interrogatory number seven. As stated, the trial court has wide discretion in determining whether to use special interrogatories and in framing the questions to be posed. Tramontin, supra at 1258. Moreover, the record is clear that both plaintiff and defendant conferred regarding the interrogatories and agreed to its framing. Accordingly, we find no error in the construction of the interrogatories as presented to the jury.
*822 While plaintiff argues a different view of the interrogatories, a JNOV should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not |9merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Davis, 774 So.2d at 89.
Upon review of the law and the record before us, because we do not find that the evidence points so strongly in favor of plaintiff that reasonable men could not reach different conclusions as to the jury’s intended award, we do not find that the trial court erroneously denied the JNOV based upon any alleged error in the calculation of the judgment. Accordingly, we affirm Walgreens’ liability of $600,000.00.

General Damages

Loss of Enjoyment of Life

In plaintiffs second assignment of error, Ms. Williams asserts that the jury verdict awarding no damages for loss of enjoyment of life constitutes an abuse of discretion. Therefore, plaintiff maintains that the trial court erroneously denied plaintiffs JNOV on this basis.
General damages are those which may not be fixed with pecuniary exactitude; instead, they “involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms.” Buckheister v. U.S. Environmental Services, LLC, 11-1148 (La.App. 5 Cir. 5/31/12), 97 So.3d 414, 422; Duncan v. Kansas City S. Ry. Co., 00-66 (La.10/30/00), 773 So.2d 670; Keeth v. Dept. of Pub. Safety & Transp., 618 So.2d 1154, 1160 (La.App. 2nd Cir.1993). Vast discretion is accorded the trier of fact in fixing general damage awards. La. C.C. art. 2324.1; Hollenbeck v. Oceaneering Int., Inc., 96-0377 (La.App. 1 Cir. 11/8/96); 685 So.2d 163, 172. This vast 1 mdiscretion is such that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Buckheister, supra at 422, citing Youn, supra at 1260. It is only when the award is, in either direction, beyond that, which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances, that the appellate court should increase or reduce the award. Youn, supra at 1261.
Therefore, the initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. Cone v. National Emergency Serv. Inc., 99-0934 (La.10/29/99), 747 So.2d 1085, 1089; Reck v. Stevens, 373 So.2d 498 (La.1979). Only after a determination that the trier of fact has abused its “much discretion” is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d 429 (La.1991); Scott v. Hospital Service District No. 1 of the Parish of St. Charles, 496 So.2d 270 (La.1986); Carollo v. Wilson, 353 So.2d 249 (La.1977); Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976).
*823 Louisiana courts have held that La. C.C. art. 2315 allows a victim to be compensated for damages caused by the delictual act of another, including damages for one’s loss of enjoyment of life. Kelley v. General Ins. Co. of America, 14-180 (La.App. 1 Cir. 12/23/14), 168 So.3d 528, citing McGee v. A C and S, Inc., 05-1036 (La.7/10/06), 933 So.2d 770, 774. Loss of enjoyment of life |1¶refers to the detrimental alterations of a person’s life or lifestyle or a person’s inability to participate in the activities or pleasures of life he enjoyed prior to the injury. Willis v. Noble Drilling, Inc., 11-598 (La.App. 5 Cir. 11/13/12), 105 So.3d 828, 845, citing McGee, supra at 773. The Louisiana Supreme Court explained that “whether or not a plaintiff experiences a detrimental lifestyle change depends on both the nature and severity of the injury and the lifestyle of the plaintiff prior to the injury.” Id., citing McGee at 775. Whether damages for loss of enjoyment of life are recoverable depends on the particular facts of the case and should be left to the discretion of the fact finder on a case-by-case analysis. Id., citing McGee at 779.
At trial, testimony was consistent and uncontradicted that prior to plaintiffs initial and subsequent strokes, Ms. Williams led a very active and independent lifestyle, which included steady employment, caring for her grandson after school and on weekends, avidly traveling throughout the United States and socializing with friends and family. Ms. Williams had a boyfriend and was the oldest of four sisters, who depicted Ms. Williams as the head of the family, the person everyone turned to for assistance. Ms. Williams’ psychologist, Dr. Beverly Howze, testified that the 2006 stroke “brought her life to a complete halt, her life as she knew it,” and that Ms. Williams continues to suffer from major depressive disorder. Subsequent to the strokes, Ms. Williams was left dependent on her family and friends, where often times her grandson cared for her rather than the opposite. Ms. Williams can no longer drive', can no longer travel on her own, and requires assistance with day-today activities.
We are mindful that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). However, considering the | ^testimony presented at trial, we find that the jury’s finding of fact that Ms. Williams did not sustain a detrimental lifestyle change as a result of her strokes, found by the jury to be proximately caused by Wal-greens’ negligence, was manifestly erroneous. We therefore find that the jury’s failure to award damages for loss of enjoyment of life constitutes an abuse of discretion. Accordingly, the trial court erred in denying plaintiffs judgment notwithstanding the verdict on this basis. We now turn to similar cases to. determine the lowest appropriate award for loss of enjoyment of life that would be within the jury’s discretion. Duncan, 773 So.2d at 683.
In Cormier v. Republic Ins. Co., 11-632 (La.App. 3 Cir. 1/18/12), 118 So.3d 16, the third circuit awarded $50,000.00 for disability and loss of enjoyment of life to a plaintiff with a preexisting hearing problem whose independence and social activities were stunted after a cervical fusion causing her a 15% total body impairment.
In Levy v. Bayou Indus. Maintenance Services, Inc., 03-37 (La.App. 1 Cir. 09/26/03), 855 So.2d 968, 980, writ denied sub nom., 03-3161 (La.2/6/04), 865 So.2d 724, and writ denied sub nom., 03-3200 (La.2/6/04), 865 So.2d 727, the first circuit affirmed an award of $50,000.00 for loss of enjoyment of life citing plaintiffs inability to continue to roller skate, difficulty in *824 flying in airplanes, difficulty in having (and enjoying) sexual relations with her husband, inability to accomplish her goal of becoming a licensed professional counsel- or, and loss of independence and ability to maintain the high level of activity she enjoyed prior to the accident.
In Clement v. Citron, 13-63 (La.App. 3 Cir. 6/19/13), 115 So.3d 1260, 1269-70, the third circuit awarded $30,000.00 for loss of enjoyment of life to a plaintiff who sustained a cervical injury in a motor-vehicle accident based upon testimony |isthat plaintiff could no longer care for her mother, needed her son’s help with household chores, and could no longer enjoy dancing and running, two activities that she loved, but did continue to make small trips if her friends did the driving.
In Crisler v. Paige One, Inc., 42,563 (La.App. 2 Cir. 1/9/08), 974 So.2d 125, 136, the second circuit affirmed an award of $40,000.00 for loss of enjoyment of life, where plaintiff, who sustained serious injury to her knees, testified that prior to the accident, her hobbies included dancing and horseback riding, which she was unable to perform after the accident, and where plaintiffs husband further testified that plaintiff was no longer physically or sexually active, and while she could cook from time to time, it was hard on her.
Considering the foregoing jurisprudence, we find that an award of $50,000.00 is the lowest award reasonably within the trial court’s discretion for Ms. Williams’ loss of enjoyment of life, and we amend the judgment accordingly.

Special Damages

Plaintiff further asserts that the jury abused its discretion in failing to award special damages for either past wages or future earning capacity. Plaintiff further contends that the jury’s award for future medical expenses was inadequate. A plaintiff is required to prove special damages by a preponderance of the evidence, and the findings of the trier of fact are 'subject to the manifest error standard of review. Smith v. Goetzman, 97-968 (La.App. 1 Cir. 9/25/98), 720 So.2d 39, 48.

A. Past Wages

To recover for actual wage loss, a plaintiff must prove that she would have been earning wages but for the accident in question. Davis v. Foremost Dairies, 45,835 (La.App. 2 Cir. 2/16/11), 58 So.3d 977, 988, citing Boyette v. United Services Auto. Ass’n, 00-1918 (La.4/3/01), 783 So.2d 1276. In other words, it is 114the plaintiffs burden to prove past lost earnings and the length of time missed from work due to the accident. Id.
Awards for past lost wages are not susceptible to the great discretion given the factfinder, because lost income is subject to mathematical calculation. Bassett v. Toys “R” Us Delaware, Inc., 36,434 (La.App. 2 Cir. 12/30/02), 836 So.2d 465, writ denied, 03-0560 (La.4/25/03), 842 So.2d 408. Past lost income can be computed on an amount the plaintiff would in all probability have been earning at the time of trial and damages for loss of past income are not necessarily limited to a multiplier of the amount earned at the time of injury. Id.
At trial, Ms. Williams, Derrick Williams and Connie West, plaintiffs sister, consistently testified that plaintiff was steadily employed since a young age, enjoyed working, and intended to return to work post-Hurricane Katrina prior to the stroke in June 2006. Plaintiff testified that most recently, prior to the hurricane, she was employed by the Orleans Parish School Board as a business manager earning approximately $26,000.00 per year. After the hurricane, however, the school *825 ' board laid off its employees in March 2006. Dr. Beverly Howze testified that plaintiff recounted to her that she was considering a couple of job offers' after the hurricane. Barney Hedgewood, licensed vocational rehabilitation counselor and life care planner, further corroborated the witnesses’ testimony that Ms. Williams’ was steadily employed. He recounted her employment upon graduating from high school up until the stroke where she performed various accounting and claims processing duties at Schwegmann’s, Aetna Insurance Company, Winn-Dixie, Bodeco Oil Company, Total Benefits Services, and Colonial Insurance Company prior to beginning employment with the school board. Mr. Hedgewood opined that after the 2006 stroke, from a functional standpoint, Ms. Williams was unemployable.
11BPr. Randy Rice, expert in economics, testified as to the calculations of Ms. Williams’ past wages. He testified that since June 10, 2006, through that Monday of trial, 6.64 years elapsed. Therefore multiplying Ms. Williams’ undisputed salary of $26,000.00 by the number of years elapsed since her injury, he calculated a past wage loss of $172,668.00.
Based on the foregoing unrebutted testimony, we find plaintiff met her burden of proving that but for the accident in question, she would have continued to earn wages. We therefore find that the jury was manifestly erroneous in finding otherwise and abused its discretion in failing to award plaintiff any damages for past wages. Accordingly, we amend the judgment to award plaintiff $172,668.00 in past wages.

B. Future Loss of Earning Capacity

A plaintiff is further allowed to recover for loss of earnings and earning capacity. Hobgood v. Aucoin, 574 So.2d 344, 345 (La.1990). Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury has deprived the plaintiff of a capacity he would have been entitled to enjoy even though he never profited from it monetarily. Folse v. Fakouri, 371 So.2d 1120, 1124 (La.1979).
To obtain an award for future loss of wages and/or loss of earning capacity, a plaintiff must present medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident. D'Ambrosia v. Lang, 07-298 (La.App. 5 Cir. 04/29/08), 985 So.2d 800, 816, citing Aisole v. Dean, 574 So.2d 1248, 1252 (La.1991).
|u;Dr. Rice additionally testified to plaintiffs future loss of earning capacity. Dr.- Rice testified that Ms. Williams’ work life expectancy at the time of trial was 5.10 years. Based upon her work life expectancy, her salary of $26,000.00 per year, with a two-and-one-half percent cost of living increase, and potential for raises, Dr. Rice calculated Ms. Williams’ future wage loss to be $130,650.00. Dr. Rice alternatively calculated Ms. Williams’ future wage loss based upon the Social Security retirement age of 66 or 6.82 years at the time of trial. Based upon the retirement age, Dr. Rice calculated Ms. Williams’ future wage loss to be $173,986.00.
Again, based upon our finding that Ms. Williams could have continued to earn wages but for her strokes, and the jury’s finding of liability against Walgreens, we find that the jury erroneously rejected the unrebutted testimony of Dr. Rice and abused its discretion in failing to award any damages for future loss of wages. We further find that based upon the consistent *826 and unrebutted testimony that Ms. Williams was steadily employed upon graduation from high school through the time of the accident, it is reasonable to conclude that she would have continued to work to retirement age. Accordingly, we amend the judgment to award plaintiff $173,986.00 for future loss of earning capacity.
C. Future Medical Expenses
Plaintiff additionally asserts that the jury’s award of $600,000.00 for future medical expenses was inadequate where Mr. Hedgewood and Dr. Rice calculated her future medical expenses to be $1,843,504.00 with placement into an assisted living facility or $3,209,310.00 for at home care by a certified nursing assistant for her lifetime.
Future medical expenses, as special damages, must be established with some degree of certainty, and a plaintiff must demonstrate that such expenditures will, |17more probably than not, be incurred as a result of the injury. D’Ambrosia, supra; citing Harvin v. ANPAC Louisiana Ins. Co., 06-204 (La.App. 5 Cir. 10/17/06), 944 So.2d 648, 655, writ denied, 06-2729 (La.1/8/07), 948 So.2d 134. The plaintiff bears the burden of proving entitlement to future medical expenses by a preponderance of the evidence. Id. Awards will not be made in the absence of medical testimony that they are indicated and setting out their probable cost. Id.
Credibility determinations are for the trier of fact, even as to the evaluation of expert witness testimony. Green v. K-Mart Corp., 03-2495 (La.5/25/04), 874 So.2d 838, 843. A fact-finder may accept or reject the opinion expressed by an expert, in whole or in part. Id.
Upon review of the record, we do not find the jury’s award of $600,000.00 for future medical expenses to be an abuse of discretion. The largest source of expense provided for in plaintiffs life care plan surrounded attended ' care for Ms. Williams, whether by an assisted living facility or at home care. The jury in this matter clearly did not believe that Ms. Williams required such extensive care. Although testimony from plaintiffs experts and treating psychologist testified that Ms. Williams requires 24-hour assistance, a review of plaintiffs own testimony reveals that Ms. Williams, to a degree, can care for herself. Additionally, her treating physician, Dr. Evita Currie, testified that as of 2012, while her left-sided paresthesia or tingling persisted, Ms. Williams reported no falls within the previous year, feeling well, helping her grandson with homework in the afternoons, and cooking more at home. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Hanks v. Entergy Corp., 06-477 (La.12/18/06), 944 So.2d 564, 580. Accordingly, the jury’s award for future medical expenses is affirmed.

11SComparative Fault

Next, plaintiff argues that the jury’s findings of comparative fault against plaintiff and Derrick Williams are manifestly erroneous; therefore, the trial court should have granted plaintiffs JNOV to eliminate or substantially reduce their respective percentages of fault.
Comparative negligence is determined by the reasonableness of the party’s behavior under the circumstances. Smith v. Jack Dyer & Associates, Inc., 633 So.2d 694, 699 (La.App. 1st Cir.1993). The factfinder’s allocation of comparative negligence is a factual matter which will not be disturbed on appeal unless it is clearly wrong or manifestly erroneous. Watson v. *827 State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 972 (La.1985).
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties. Watson, supra at 974.
Applying the Watson factors set forth above, we find that the jury’s allocation of fault is within an acceptable range and is not manifestly erroneous.
¡ ^Louisiana law imposed a duty upon both Ms. Williams and Derrick Williams relative to their- action in handling the prescription medication. The purchaser of a prescription drug, under ordinary circumstances, has a duty to inspect the label on the prescription container to ascertain whether the label bears the name of the person for whom the prescription was intended. Davis v. Katz & Besthoff, Inc., 333 So.2d 698 (La.App. 4th Cir.1976).
The trial court accepted defendant’s special jury charge reciting this rule of law and charged the jury as follows:
Under ordinary circumstances, the purchaser of a prescription drug has a duty to inspect the label of the prescription container to ascertain whether the label bears the name of the person for whom the prescription was intended.
You may decide that because of the plaintiffs medical condition at the time the duty may not apply.
Thus, the jury, in determining if and how to apportion fault between the parties and Derrick Williams, was charged to evaluate and determine whether the purchaser of the medication adequately inspected the medication received so as to have potentially prevented the resulting harm. Based upon the facts of this case, the jury reasonably could have concluded that the above duty devolved upon both Derrick Williams, the actual “purchaser” of the medication, and plaintiff, who ingested the medication.
At trial, inconsistent testimony existed as to whether Ms. Williams’ or another Walgreens’ customer’s name was printed on the outside of the prescription bag. However, all testimony at trial was consistent that the prescription bottle contained someone else’s name and not Ms. Williams’ name and clearly reflected that the medication was Zyprexa and not Toprol, a medication Ms. Williams regularly took and was familiar with. Further, by plaintiffs own testimony, both |¡>nshe and Derrick possessed the bottle prior to plaintiff ingesting the medication. Specifically, plaintiff testified:
Derrick gave me the bag when he came home. And I was feeling so bad I said, you know, just give it to me. I couldn’t open the bottle, because I was feeling bad, so I gave him the bag back and asked him just to give me a pill with a glass of water.
*828 Plaintiff later testified, however, that she did not see the bottle. Derrick Williams testified as follows:
I think I gave her the bag, or I may have opened it and given her a pill and the water. I don’t actually remember the chronological order that the event took place.
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings. Hanks, supra at 580. As stated above, where there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous or clearly wrong. Id. Accordingly, based upon the above testimony, we cannot find that the jury’s finding of comparative fault between the parties and Derrick Williams to be manifestly erroneous, nor do we find that the trial court erred in denying the JNOV. We further do not find any manifest or clear error in the jury’s allocation of fault, where but for plaintiff and her son’s failure to examine the prescription bottle, she would not have ingested the medication and the resulting injury would not have occurred. The jury’s allocation of fault is affirmed.

Post-Trial Discovery

Finally, plaintiff asserts the trial court erred in failing to impose a larger monetary sanction for discovery abuses based upon Walgreens’ sales data produced post-trial. After, a hearing, the trial court saw fit to impose sanctions against Walgreens in the amount of $7,500.00. In reaching its ruling, the trial court stated relative to his in camera inspection of sales data produced post-trial:
I didn’t glean any additional facts or any additional content that would have caused the Court a problem in the way the case was tried.
... I think a clear view of those in camera records clearly indicates that everything that they’ve produced was produced during the trial.
Based upon the record before us, we do not find that the trial court was manifestly erroneous or clearly wrong in his conclusions. See Butler v. Reeder, 98-484 (La.App. 5 Cir. 12/29/98), 728 So.3d 888, 894. Decree
Considering the foregoing, we amend the trial court’s judgment to award plaintiff $50,000.00 for loss of enjoyment of life. We further amend the trial court’s judgment to award plaintiff $172,668.00 for past wages and $173,986.00 for' future loss of earning capacity. The above awards are to be reduced by plaintiffs and Derrick Williams’ respective percentages of fault. We affirm the judgment as amended.

AFFIRMED AS AMENDED

. Ms. Carter testified that she was a medical assistant.