896 So.2d 1146 (2005)
Venita MATTHEWS
v.
Faith Chiason BREAUX and State Farm Insurance Company.
No. 04-CA-958.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 2005.
*1147 John L. Dorsey, New Orleans, LA, for Plaintiff/Appellant.
Patrick D. Derouen, Laurie L. DeArmond, New Orleans, LA, for Defendant/Appellee.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
Plaintiff/appellant Venita Matthews appeals a judgment of the trial court dismissing her case against the defendants/appellees Faith Chiason Breaux and State Farm Insurance Company. We affirm.
Matthews filed suit seeking damages suffered when a Ford Explorer driven by Breaux collided with the rear end of Matthews' Infiniti. At trial, Matthews testified that on August 23, 2002, she was driving down Lapalco Boulevard when traffic halted to allow a truck to back into *1148 a driveway. Matthews stopped and put her car in park, waiting for traffic to proceed, when the Breaux vehicle hit her from behind. Matthews was jerked forward, and immediately after the jolt, she felt pain in her neck. Breaux came up to her and asked if she was alright, but Matthews was unable to respond. Breaux and Matthews moved to a driveway, out of the traffic flow, and both examined the rear of Matthews' car. According to Matthews, there was no debris on the street from her car. Breaux left before the police arrived. Matthews "flagged down" a witness, Shawn Preatto, who was previously unknown to her.
On September 5, 2002, Matthews sought medical treatment. Her physician diagnosed muscle strain to her neck, back, and shoulders. Matthews testified that she had constant pain during the five-month period of treatment, and that she still has occasional headaches. She is limited in her activities due to back pain.
Matthews stated that prior to the accident, she had been employed at Harrah's Casino, but suffered bilateral carpal tunnel syndrome and ulnar nerve decompression in both arms, injuries for which she received worker's compensation. She did not allege that those injuries were aggravated in the present accident. Matthews also admitted, on direct examination, to having pled guilty to Food Stamp fraud.
Matthews was cross-examined about other accidents. In 2001, she suffered a slip-and-fall at a Wal-Mart store, injuring her neck, back and shoulder. However, she testified that she was not having symptoms from this fall at the time of the auto accident. She also had an auto accident in 1997 in which she injured her neck and back, and another fall in 1994. After the collision with Breaux, she was involved in another rear-end collision, in May, 2003. Insurance claims and/or lawsuits were filed in all these instances.
Also on cross, Matthews was confronted with statements from her deposition, in which she had stated that the impact had caused part of a broken light to fall on the ground, and that the paint was chipped. When asked why she testified at trial that there was no debris on the ground, Matthews stated that the tail light was broken and just hanging off the car. There was no white paint from Matthews car on the Explorer, which was black, but there was black paint on Matthews' bumper. According to Matthews, the passenger side of her vehicle was smashed in, the bumper was pushed in, and the back of her car had scratches and marks. However, Matthews did not see any damage to the Explorer, and has not repaired the damage to her own car.
In December, 2002, Matthews went to the Medical Center of Louisiana at New Orleans for "female problems." The physician there noted that she was symptomatic for tenderness and pain in her back; however, there was no mention of the August accident in the hospital report. Also admitted into evidence were reports from Dr. Eric George, who was treating Matthews for carpal tunnel syndrome. Again, no history of any auto accident appears in the report. Matthews testified that she saw no need to mention the accident to these physicians, since they were treating her for other conditions. We note in this regard that the history given to Medical Center of Louisiana did note Matthews' history with regard to her carpal tunnel syndrome.
Dr. Charles Simmons, of Gulf Coast Medical Association, testified that Matthews consulted his office on September 5, *1149 2002, about injuries suffered in the accident. Dr. Simmons did not treat her initially. She told the physician that in the accident, she jolted forward and backward, jolting her neck, that she had immediate pain in her neck and a few hours later, in her shoulders and mid-back. The initial diagnosis was cervical strain, thoracic strain, lumbar strain, and bilateral trapezius strain. There were no objective symptoms displayed at that time, but Matthews did complain of tenderness. Physical therapy was prescribed as well as medication for pain and muscle relaxers. On her next visits, the only objective symptoms were slight spasms in the neck and trapezius muscles. If the history given was accurate, Dr. Simmons believed that the accident was causally related to her symptoms.
On cross-examination, Dr. Simmons testified that Matthews was discharged from treatment for her 2001 Wal-Mart accident in August, 2001, at which time she continued to have complaints of pain in her cervical, thoracic, and lumbar spine, as well as in her shoulders. She was discharged to see an orthopedist. The doctor also testified that activities of daily living such as having poor posture or lifting something heavy could have caused symptoms similar to those described by Matthews.
Shawn Preatto testified that at the time of the accident, he was driving behind Breaux. Traffic was at a standstill, when he saw the Explorer shake. Afterwards, Breaux and Matthews pulled into a parking lot. Matthews came to his car, and asked if he had seen the accident. Preatto then pulled into the same lot. He left the scene, but then returned about 30 minutes later when Matthews called him. Although Preatto could not recall the date and time of the accident at trial, he stated in his deposition that it occurred in 2003, at around 12:00. He did not see an actual impact, and did not see the cars touching.
Breaux testified that at the time of the accident, traffic on Lapalco had been stopped for about 15-20 minutes. Nothing unusual happened until Matthews stepped out of her vehicle and walked between the two cars. Matthews was very irate, and asked her to pull into a parking lot. Matthews said "you hit me." Breaux testified that she did not have any impact with Matthews's car. Matthews walked to Lapalco and waved someone over. The man who got out of that car was not Preatto, but was another, very big man. The man wrote something on a piece of paper, put it on Matthews' car, and left. Breaux felt intimidated, and offered to call the police, but Matthews refused, said she was okay. Matthews suggested instead they examine her trunk, saying that she wanted to see if her trunk worked. Matthews opened it, then immediately slammed it closed, saying only that she had merchandise to deliver. There was no damage to Matthews' car. Matthews took down Breaux's license number, then opened Breaux's door and wrote down the vehicle identification number. Breaux gave Matthews her driver's license and cell phone numbers. Breaux left, and Matthews later called her to come back, but Breaux did not do so. When she returned home, Matthews had called her home. Matthews also had her daughter's telephone number. Upon questioning from the court, Breaux testified that she suspected a "scam."
In granting judgment, the trial court stated that it found Matthew's testimony regarding the impact was unpersuasive. Photographs admitted at trial revealed no damage to the vehicle. Further, the court *1150 found Matthews' explanation of the circumstances by which she located her witness to be "very suspicious." The court found that based on the evidence and demeanor of the witnesses, Matthews did not bear her burden of proving that an accident occurred.
On appeal, Matthews argues that no actual photographs were introduced into evidence, but only "copy machine" photos were admitted by Breaux. Matthews did not object to the admission of these copies. In order to preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony and state the reasons for the objection. The general rule is that a rule of evidence not invoked is waived, and, hence, a failure to object to evidence waives the objection to its admissibility.[1] Having failed to object at trial, the objection is not properly preserved for appeal.
The plaintiff has the burden of proving every essential element of his case, including the cause-in-fact of damage, by a preponderance of the evidence. Proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not.[2] In the present case, we find no error in the determination by the trial court that Matthews failed to prove that an accident occurred.
Matthews urges that the trial court rejected Matthews' testimony as to the accident because she is African-American, and Breaux is white. She additionally argues that it was error to allow cross-examination relative to her prior employment and her prior accident claims. Finally, she urges that her testimony was not impeached, but was rather supported by the testimony of Preatto, Dr. Simmons, and an appraisal for repairs prepared by State Farm.
The record is absolutely devoid of any suggestion that the court based its credibility findings on racial prejudice. It is within the sound discretion of the trial judge to observe the testimony and demeanor of all witnesses firsthand and to assess their credibility, and great deference is given to such determinations.[3] An appellate court cannot reverse a trial court's decision based on factual findings and reasonable evaluations of credibility unless those conclusions are clearly wrong.[4]
Preatto did not see a collision, nor did he testify as to any damage to Matthews' car. The copies of the photos admitted at trial do not show a broken tail light on the Matthews' vehicle, nor do they depict any smashed passenger side, or that the bumper was pushed in, as Matthews had testified. Further, the auto appraisal which did reveal that a number of repairs were needed, is not sufficient, absent other credible evidence, to prove that an accident occurred. Finally, Dr. Simmons' testimony as to Matthews' injuries was based on the account given by her to him, and he testified the diagnosis was largely based *1151 on subjective statements, there being only "slight" objective evidence. Breaux testified that no impact occurred.
After review, we find nothing in the record to suggest that the court was clearly wrong in its credibility evaluation of Matthews.
Matthews suggests that she was "prejudged" by the cross-examination on her prior work history and previous accidents. While the testimony regarding her work history was irrelevant, its admission was harmless in light of the other evidence. As to her previous accidents, her testimony was not offered for impeachment purposes so as to violate La. C.E. 608(B):
B. Particular acts, vices, or courses of conduct. Particular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of crime as provided in Articles 609 and 609.1 or as constitutionally required.
The testimony with regard to these accidents showed that she had claimed several injuries to the same areas complained of in the present lawsuit, and in at least one case, had been treated at the same clinic. We find the testimony was both relevant and admissible. In addition, there is nothing in the record to indicate that the court was prejudiced by this testimony, but rather, based its findings on Matthews' version of events which was unsupported by any objective evidence.
For the foregoing reasons, the judgment of the trial court is affirmed. Matthews is charged with all costs of this appeal.
AFFIRMED.
NOTES
[1] Ratcliff v. Normand XXXX-XXXX (La.App. 3 Cir. 6/5/02), 819 So.2d 434; Nitro Gaming, Inc. v. D.I. Foods, Inc. 34,301 (La.App. 2 Cir. 11/1/00), 779 So.2d 817.
[2] Riley v. Salley XXXX-XXXX (La.App. 4 Cir. 4/21/04), 874 So.2d 874.
[3] Davis v. Schwegmann Giant Super Markets, 92-2051 (La.App. 4 Cir. 1/13/94), 631 So.2d 479.
[4] Stobart v. State Through DOTD, 617 So.2d 880 (La.1993); see also, Rosell v. ESCO, 549 So.2d 840 (La.1989).