960 So.2d 274 (2007)
Alan KESTER
v.
ZAPATA GULF PACIFIC, L.L.C. and L & M Botruc Rental, Inc.
No. 2006-CA-0973.
Court of Appeal of Louisiana, Fourth Circuit.
May 23, 2007.
Wm. Ryan Acomb, Laurie L. Dearmond, Porteous, Hainkel & Johnson, LLP, New Orleans, LA, for L & M Botruc Rental, Inc.
James K. Carroll, Stephanie D. Skinner, Fowler Rodriguez, New Orleans, LA, for Zapata Gulf Pacific, L.L.C.
Court composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge MAX N. TOBIAS Jr.
KIRBY, Judge.
Zapata Gulf Pacific, LLC ("Zapata") appeals the trial court judgment in favor of L & M Bo-Truc Rental, Inc. ("Bo-Truc"), awarding reimbursement to Bo-Truc for maintenance and cure payments made by Bo-Truc to or on behalf of its employee, Alan Kester.
In this Jones Act case, plaintiff, Mr. Kester, was injured while aboard the M/V Midway Tide while in the course and scope of his employment with Bo-Truc. Zapata was the owner of the M/V Midway Tide. Plaintiff filed suit against Zapata and Bo-Truc. Bo-Truc filed a reconventional demand against Mr. Kester. Bo-Truc also filed a cross-claim against Zapata, seeking reimbursement for the maintenance and cure payments made to or on behalf of Mr. Kester. Mr. Kester settled his claims with Zapata and Bo-Truc prior to trial. Following trial, the trial court awarded Bo-Truc reimbursement from Zapata for maintenance and cure payments in the amount of $51,359.12, plus judicial interest *276 from date of demand. Zapata now appeals.
On appeal, Zapata first argues that the trial court failed to apply the correct standard of law in holding that Bo-Truc was entitled to reimbursement for payments it made after Mr. Kester reached maximum medical improvement. Zapata further argues that in failing to apply the correct standard of law, the trial court improperly substituted its own opinion in lieu of the only expert medical evidence in the record regarding maximum medical improvement.
Zapata does not contest that it must reimburse Bo-Truc for the maintenance and cure expenses Bo-Truc paid before Mr. Kester reached maximum medical improvement, and which are directly related to the accident for which recovery is sought from Zapata. However, Zapata argues that an employer is not entitled to reimbursement from a third party for voluntary payments made beyond its legal obligation to pay maintenance and cure.
Maintenance and cure extends to the time an injured seaman reaches maximum medical recovery. Butler v. Zapata Haynie Corporation, 92-71 (La.App. 3 Cir. 2/23/94), 633 So.2d 1274, 1283, writ granted in part, judgment amended on other grounds, 94-1171 (La.7/5/94), 639 So.2d 1186. Citing the case of Pelotto v. L & N Towing Company, 604 F.2d 396, 400 (5th Cir.1979), the Butler court stated the definition of maximum medical recovery as follows:
Maximum medical recovery . . . is achieved when it appears probable that further treatment will result in no betterment of the seaman's condition. . . . Thus, where it appears that the seaman's condition is incurable, or that future medical treatment will merely relieve pain and suffering, but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved. (Emphasis in original).
Butler v. Zapata Haynie Corporation, 633 So.2d at 1283.
The record reveals that Bo-Truc paid Mr. Kester's maintenance and cure expenses from the time of his accident until August 1, 2002. Dr. Kurt Krueger, a specialist in anesthesiology and pain management, treated Mr. Kester following his accident. Dr. Krueger stated in a medical report and in his deposition that Mr. Kester reached maximum medical improvement as of October 24, 2001. Mr. Kester also received treatment from Dr. M.L. Woodruff, a chiropractor. Dr. Woodruff was not deposed, but stated in a medical report that Mr. Kester reached maximum medical improvement as of December 3, 2001. Mr. Kester continued receiving treatment from both Dr. Krueger and Dr. Woodruff after the dates that he was found by each to have reached maximum medical improvement.
In reasons for judgment, the trial court noted that Mr. Kester continued to receive treatment from Dr. Woodruff until July 25, 2002. The court stated that plaintiff complained of neck pain and stiffness in his back on each visit, and improved after each treatment. The court found that even though Dr. Krueger determined that Mr. Kester had reached maximum medical improvement as of October 24, 2001, Bo-Truc was reasonable to continue paying maintenance and cure to Mr. Kester after that date based on the fact that Dr. Woodruff continued to treat him and report improvements.
In Dr. Woodruff's medical reports of treatment Mr. Kester received following December 3, 2001, he noted that Mr. Kester continued to complain of neck and back pain at each visit, and that his symptoms *277 decreased following each treatment. However, Dr. Woodruff never retracted his earlier statement in his report, which was repeated in correspondence of December 12, 2001, that Mr. Kester reached maximum medical improvement as of December 3, 2001. Bo-Truc did not offer the testimony or records of any other medical expert to rebut the statements by Dr. Krueger and Dr. Woodruff that Mr. Kester had reached maximum medical improvement. Based on the evidence in the record, the latest possible date that Bo-Truc was obligated to pay maintenance and cure expenses for Mr. Kester was December 3, 2001. In the absence of any medical evidence rebutting the statements of Dr. Krueger and Dr. Woodruff regarding the date of maximum medical improvement, we find that the trial court erred in holding Zapata liable to Bo-Truc for maintenance and cure payments made after December 3, 2001, and we will amend the trial court judgment accordingly.
In the second assignment of error, Zapata argues that the trial court erred in holding Zapata liable to Bo-Truc for payments made for Mr. Kester's eye care treatment. Zapata claims that Bo-Truc did not carry its burden of proving that the eye care expenses were causally related to the accident at issue.
In making its claim for reimbursement against Zapata, Bo-Truc introduced into evidence a printout that included payments made on behalf of Mr. Kester that were allegedly for maintenance and cure. Included in this printout were payments made to Dr. Ronald Landry at Eye Care Associates in the amount of $3,680.00. Although the trial court did not make a specific reference to the eye care expenses in reasons for judgment, the court found Zapata liable to Bo-Truc for the entire amount claimed by Bo-Truc for maintenance and cure. In response to Zapata's argument regarding the eye care expenses, Bo-Truc does not challenge Zapata's claim that no causal connection to the accident was proven, but rather argues that Zapata waived its right to object to the inclusion of the eye care expenses because no objection was offered at trial to the maintenance and cure payment records.
We find merit in Zapata's argument that the introduction of the maintenance and cure payment records without objection did not relieve Bo-Truc of its burden of proving that the expenses claimed were necessitated by the accident at issue. It is undisputed that Bo-Truc made the maintenance and cure payments on behalf of Mr. Kester as alleged in its printout. However, in addition to introducing evidence of maintenance and cure payments made on behalf of Mr. Kester, Bo-Truc had to prove a causal connection between the accident and those payments in order to prevail in its claim for indemnification from Zapata.
An innocent employer is entitled to indemnification from a negligent third party for payments made to an employee injured as a result of the third party's negligence. Savoie v. Lafourche Boat Rentals, Inc., 627 F.2d 722, 723-24 (5th Cir.1980). (Emphasis ours). As the plaintiff in this indemnification claim, Bo-Truc had the burden of proving every essential element of its case, including causation, by a preponderance of the evidence. Matthews v. Breaux, XXXX-XXXX, p. 6 (La.App. 5 Cir. 2/15/05), 896 So.2d 1146, 1150. Although Bo-Truc presented medical evidence establishing that maintenance and cure payments made on behalf of Mr. Kester for his neck and back injuries from the date of the accident through December 3, 2001 were causally connected to the accident at issue, no evidence was presented by Bo-Truc to establish a causal *278 connection between the accident and Mr. Kester's eye care expenses. Therefore, we find that the trial court erred in holding Zapata liable for payments made by Bo-Truc for Mr. Kester's eye care expenses, and we will amend the judgment accordingly.
For the reasons stated above, the trial court judgment is amended to eliminate the amounts awarded to Bo-Truc for eye care expenses, and for maintenance and cure payments made beyond December 3, 2001, the date established in the record as the date that Mr. Kester reached maximum medical improvement for his neck and back injuries. The trial court judgment in favor of Bo-Truc and against Zapata is reduced from $51,359.12 to $27,899.28 (See appendix.)[1] In all other respects, the trial court judgment is affirmed.
AMENDED AND, AS AMENDED, AFFIRMED.

APPENDIX

----------------------------------------------------------------------
 DATE PAYEE AMOUNT
----------------------------------------------------------------------
 5-11-01 Alan Kester 465.00
----------------------------------------------------------------------
 5-17-01 Alan Kester 195.00
----------------------------------------------------------------------
 6-1-01 Alan Kester 450.00
----------------------------------------------------------------------
 7-20-01 Lafourche Orthopedic 651.00
----------------------------------------------------------------------
 7-20-01 Dr. Michael Haydel 759.00
----------------------------------------------------------------------
 7-26-01 Dr. Michael Haydel 837.00
----------------------------------------------------------------------
 7-26-01 Houma Orthopedic 50.00
----------------------------------------------------------------------
 7-26-01 Physicians Surgical 632.90
----------------------------------------------------------------------
 8-6-01 Physicians Surgical 629.36
----------------------------------------------------------------------
 8-6-01 Dr. Michael Haydel 837.00
----------------------------------------------------------------------
 8-17-01 Alan Kester 930.00
----------------------------------------------------------------------
 8-17-01 Houma Orthopedic 50.00
----------------------------------------------------------------------
 8-17-01 Physicians Surgical 637.07
----------------------------------------------------------------------
 9-1-01 Alan Kester 450.00
----------------------------------------------------------------------
 9-11-01 Dr. Michael Haydel 78.00
----------------------------------------------------------------------
 9-11-01 Dr. M.L. Woodruff 509.00
----------------------------------------------------------------------
 9-17-01 Apollo Enterprises 248.77
----------------------------------------------------------------------
 9-17-01 Dr. M.L. Woodruff 780.00
----------------------------------------------------------------------
 9-26-01 W. Fla. Regional Med. 1,924.00
----------------------------------------------------------------------
 9-26-01 Dr. M.L. Woodruff 360.00
----------------------------------------------------------------------
 10-1-01 MASH, Inc. 39.00
----------------------------------------------------------------------
 10-1-01 Alan Kester 465.00
----------------------------------------------------------------------
 10-9-01 Apollo Enterprises 171.32
----------------------------------------------------------------------
 10-9-01 N. Fla. Surgery Ctr. 1,590.00
----------------------------------------------------------------------
 10-9-01 Comprehensive Pain Med. 175.00
----------------------------------------------------------------------
 10-9-01 Dr. M.L. Woodruff 225.00
----------------------------------------------------------------------
 10-11-01 Dr. M.L. Woodruff 84.00
----------------------------------------------------------------------
 10-18-01 N. Fla. Surgery Ctr. 1,590.00
----------------------------------------------------------------------
 10-30-01 MASH, Inc. 439.50
----------------------------------------------------------------------
 10-30-01 Apollo Enterprises 18.35
----------------------------------------------------------------------
 10-30-01 Dr. M.L. Woodruff 890.00
----------------------------------------------------------------------
 11-1-01 Alan Kester 750.00
----------------------------------------------------------------------
 11-13-01 Dr. M.L. Woodruff 405.00
----------------------------------------------------------------------
 11-13-01 Comprehensive Pain Med. 2,000.00
----------------------------------------------------------------------
 11-20-01 Apollo Enterprises 185.66
----------------------------------------------------------------------
 11-20-01 Comprehensive Pain Med. 75.00
----------------------------------------------------------------------
 11-20-01 Dr. M.L. Woodruff 405.00
----------------------------------------------------------------------
 12-1-01 Alan Kester 75.00
----------------------------------------------------------------------

The following checks were issued after December 3, 2001, but represent payment for services rendered prior to that date:

----------------------------------------------------------------------
 12-10-01 Comprehensive Pain Med. 1,075.00
----------------------------------------------------------------------
 12-10-01 N. Fla. Surgery Ctr. 1,590.00
----------------------------------------------------------------------
 12-10-01 Dr. M.L. Woodruff 470.00
----------------------------------------------------------------------
 12-18-01 Dr. M.L. Woodruff 600.00
----------------------------------------------------------------------
 12-26-01 Dr. M.L. Woodruff 345.00
----------------------------------------------------------------------
 12-26-01 Apollo Enterprises 18.35
----------------------------------------------------------------------
 1-10-02 Dr. M.L. Woodruff 600.00
----------------------------------------------------------------------
 1-17-02 Dr. M.L. Woodruff 210.00
----------------------------------------------------------------------
 2-5-02 Dr. M.L. Woodruff 195.00
----------------------------------------------------------------------
 2-7-02 Sacred Heart Hosp. 615.00
----------------------------------------------------------------------
 2-7-02 Dr. M.L. Woodruff 1,125.00
______________________________________________________________________
 TOTAL $27,899.28
----------------------------------------------------------------------

NOTES
[1] This figure does not include payments made to Dr. Ronald Landry at Eye Care Associates. It also does not include payments made to or on behalf of Mr. Kester for maintenance or medical expenses incurred after December 3, 2001. However, some checks issued after December 3, 2001 represented payment for services rendered prior to that date, and those amounts are included in this figure.