KARLIN RILEY

VERSUS

RACHEL LEE HOLLANDER,
JOHN D. HOLLANDER AND
METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY

NO. 19-CA-520  C/W
19-C-473

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 765-256, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING

May 28, 2020

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Marc E. Johnson, and John J. Molaison, Jr.

<u>**AFFIRMED**</u>
    **JJM**
    **FHW**
    **MEJ**

COUNSEL FOR PLAINTIFF/APPELLANT,
KARLIN RILEY

    John W. Redmann
    Edward L. Moreno
    Kelly S. Rizzo

COUNSEL FOR DEFENDANT/APPELLEE,
RACHEL HOLLANDER, JOHN HOLLANDER AND METROPOLITAN
PROPERTY AND CASUALTY INSURANCE COMPANY

    Andre' C. Gaudin
    Ryan D. Kelley

**MOLAISON, J.**

In this automobile accident case, plaintiff appeals from a jury verdict and subsequent trial court denials of a judgment notwithstanding the verdict and a motion for new trial on the issue of alleged damages. For the reasons that follow, we affirm the jury's verdict and the trial court's rulings, and further deny relief on plaintiff's consolidated writ application, in which he challenges the trial court's assessment of costs in the underlying matter.

## PROCEDURAL HISTORY

On October 16, 2015, a vehicle driven by plaintiff, Karlin Riley, was involved in a rear end collision with a car driven by defendant, Rachel Hollander, on I-10 in St. John Parish. Plaintiff thereafter filed a petition for damages in the Twenty-Fourth Judicial District Court on September 27, 2016, naming Hollander, her husband, and their insurer as defendants, alleging injuries that included pain and suffering as well as past and future medical expenses. On September 26, 2018, the trial court granted plaintiff's motion for partial summary judgment on the issue of liability, which determined that Hollander was at fault for the October 2015 collision. The matter proceeded to trial on April 15, 2019, at the conclusion of which the jury returned a verdict in favor of defendants, awarding no monetary damages to plaintiff. Plaintiff filed a motion for judgment notwithstanding the verdict, a motion for new trial and, alternatively, for additur, which were all denied by the trial court following a hearing on May 29, 2019. This timely appeal follows.

## FACTS

As noted above, liability was not an issue at trial. The trial court had previously granted a partial summary judgment finding that Rachel Hollander was fully liable for the rear end collision that occurred between her and plaintiff on October 16, 2015.

*Plaintiff's testimony at trial*

Plaintiff testified at trial regarding his alleged injuries. He stated that, prior to the accident with defendant, he had never before been in an accident or sustained an injury that required medical treatment.[1] This included the time he spent playing college football. Plaintiff stated that immediately after the accident, his body stiffened. At the scene of the accident, plaintiff did not tell defendant he was injured, but told the investigating State Trooper that his neck was stiff and his back was hurting. The stiffness and pain were worse the following day. He continued to work on light duty the following week even though he was in extreme pain. In connection with plaintiff's testimony, the jury was shown pictures of the damage to plaintiff's vehicle taken right after the accident. Plaintiff did not know if there was damage to the front of defendant's vehicle.

After his pain increased, plaintiff first sought out an attorney, who then referred him to a doctor. He went to see Dr. William Alden for his "neck" and "back." He also went to physical therapy at Dr. Alden's offices. On some days, he felt better than others. Plaintiff asserted that he never received relief that lasted for more than an hour when he was treating with Dr. Alden, which contradicted notes in Dr. Alden's file which stated that plaintiff reported that therapy was helping. Plaintiff stopped therapy upon the advice of his attorneys, and was discharged by Dr. Alden in May of 2016.

After Dr. Alden, plaintiff went to see Dr. Alan Johnston, an orthopedic surgeon, in April of 2016. Dr. Johnston recommended epidural steroid injections, which plaintiff decided against. There is no indication in Dr. Johnson's notes that plaintiff refused the proposed injections because he thought they would not be effective. Dr. Johnson never recommended surgery, only the injections, rest, and

---

[1] Plaintiff later acknowledged in his trial testimony that he had been involved in previous automobile accident in 2011, but denied sustaining any injuries, although he had accepted a settlement check from the other driver's insurance company.

continued medication. Dr. Johnson discharged plaintiff in July of 2016 because he had reached maximum medical improvement.

Plaintiff then consulted a neurosurgeon, Dr. Morrow, who wrote in plaintiff's report that he could not explain where plaintiff's pain was originating from. Plaintiff did not recall if Dr. Morrow stated on June 26, 2017, that he was not a candidate for surgery before being discharged that same month.

Plaintiff was then referred to Dr. Liechty by his new attorneys. Plaintiff testified that Dr. Liechty recommended two surgeries, one for his back and another for his neck. Dr. Liechty never prescribed him either medical or physical therapy. The recommended surgeries had not been scheduled as of the time of trial.

### Dr. Alden

Dr. William Alden was accepted by the court as an expert in the fields of physical and rehabilitation medicine. Dr. Alden did not have a specific recollection of treating plaintiff, and referred to his written notes and plaintiff's chart throughout the testimony. According to Dr. Alden's notes, he first saw plaintiff on November 24, 2015. The plaintiff's complaints were neck and back pain, left leg pain, headaches, dizziness and chest pain, which he claimed were related to an automobile collision. Plaintiff did not receive medical attention immediately following the accident, and had his appointment with Dr. Alden approximately 40 days after the accident, at the direction of plaintiff's attorney. Plaintiff continued to work as a welder "for a while" after the accident. Dr. Alden's noted indicated that his findings after the first examination of plaintiff were "normal range of motion with tenderness and spasms in the cervical or neck area bilaterally and in the trapezius muscles and in the front, the sternocleidomastoid muscles…tenderness on the left side of the chest …normal range of motion of the lumbar spine with tenderness present bilaterally and … muscle spasms bilaterally." Plaintiff also had tenderness on the left thigh. Dr. Alden testified that plaintiff did not report a

significant preexisting history of illness or injury, and he noted that plaintiff was a former athlete. Dr. Alden prescribed anti-inflammatory medication as well as a mild muscle relaxer. In plaintiff's second visit with Dr. Alden on December 15, 2015, plaintiff complained of neck, back, left leg pain, headaches, dizziness, chest pain, and right shoulder tenderness. Plaintiff's X-rays from that visit were normal.

Plaintiff had an MRI prior to a visit with Dr. Alden on February 24, 2016. At that time, plaintiff continued with complaints of neck, back, left leg pain, headaches, dizziness and the chest pain. The MRI results showed bulging discs at L3-L4 and L4-L5 and facet joint inflammation. Dr. Alden opined that the findings were consistent with injuries you might see from rear-end collisions and also sports injuries. There was also a lumbar MRI conducted, which showed a vertebral disc with an annulus fibrous teas and a posterior subligamentous herniation on the left side. Dr. Alden stated that it was difficult to establish the date of the tear, but based on plaintiff's lack of previous medical records and work history, it was "more probable than not that that pathology did not exist before." Dr. Alden recommended that plaintiff consult with an orthopedic surgeon who could give treatment that involved steroid injections.

Dr. Alden's last visit with plaintiff was in early May of 2016. Plaintiff's initial pain levels had dropped from the previous appointment.

On cross examination, Dr. Alden was asked to review plaintiff's intake form. When asked on the form to identify the injured areas, plaintiff circled his neck, back and part of the shoulders, but he did not appear to circle the lower back. Plaintiff did not mention headaches, chest pain, or dizziness on the intake form. Plaintiff did not indicate that he had suffered any type of head trauma in the accident. Dr. Alden's diagnosis of a sprain of the ligaments of the cervical spine in the neck was based on the clinical history that plaintiff presented and plaintiff's assertion that there was no intervening trauma between the accident and the time

that Dr. Alden examined him. Plaintiff's pain rating was based solely on his subjective complaints. Dr. Alden did not note that plaintiff was having any difficulty moving on the days that he examined plaintiff. There was no indication from the physical therapy notes at Dr. Alden's clinic that plaintiff was unable to do the exercises during treatment. A note in the file from March 18, 2016 showed that plaintiff discharged himself from physical therapy.

At the time of the first examination, Dr. Alden understood that plaintiff was working "full duty" as a welder. Plaintiff did not request a note from Dr. Alden to reduce him to a lighter duty. A nurse practitioner in the office took plaintiff off of work until he could see an orthopedic physician.

### Dr. Morrow

Dr. Kevin Morrow, who examined plaintiff in 2017, was qualified as an expert in the field of neurosurgery. At that time, plaintiff complained of cervical, thoracic and lumbar back pain, as well as radiating pain in his left leg down to his big toe. Dr. Morrow concluded that plaintiff was "full strength, normal reflexes" and "neurologically intact." He reviewed plaintiff's MRI films and saw nothing remarkable on the cervical MRI, but did note a disc bulge and bone spurs.

Dr. Morrow opined that the most likely cause of the conditions he observed in plaintiff's cervical spine was "aging" and "degeneration." He did not see anything in the thoracic MRI. In the lumbar MRI, Dr. Morrow noted a minor central disc bulge with possible nerve impingement that he concluded was less likely caused by traumatic event. Dr. Morrow gave plaintiff his opinion that surgery would not help him.

In his objective findings, Dr. Morrow was not able to explain where plaintiff's pain was originating from, but he concluded that the pain was "out of proportions [*sic*]" to the findings. Dr. Morrow suggested to plaintiff that he undergo a rheumatological examination to find other possible causes of his pain,

such as arthritis or lupus. Dr. Morrow could not conclude if plaintiff's pain was caused by the accident. He further opined that plaintiff was not a candidate for fusion surgery at C3-4 or lumbar fusion surgery at L5-S1.

Defendant did not hire Dr. Morrow to testify, rather he was seen by plaintiff on his own initiative through the University Medical Center clinic.

### Dr. Todd

Dr. Andrew Todd was called by the defense and accepted as a medical doctor with expertise in the specialty of orthopedic surgery and orthopedic spinal surgery. He first saw plaintiff on October 19, 2018, at which time plaintiff claimed having back and neck pain related to an automobile accident that occurred on October 16, 2015. At the time of the visit, plaintiff reported having intense neck pain that radiated into his shoulder, chest and shoulder blade. He also reported symptoms in his index finger, as well as numbness in his thigh and shin, calf and big toe. Plaintiff did not report radiating pain to Dr. Liechty one month later on November 14, 2018. At the time Dr. Todd saw plaintiff, he was only on one medication and was not in physical therapy.

Dr. Todd reviewed all the medical records provided to him, including MRIs of the neck and back. After an examination, Dr. Todd concluded that plaintiff had a full range of motion in his neck without pain when bending it forward and backward, with exception of slight pain when doing the Spurling maneuver, which is used to elicit nerve compression symptoms. He evaluated plaintiff's shoulder and found no gross weakness. He examined plaintiff's lumbar spine and there seemed to be "some exaggeration of pain on examination," and he had full extension. Dr. Todd stated that it was not normal to see a full range of motion in someone reporting the level of pain that plaintiff did. He concluded that there was amplification of pain when plaintiff reported back pain resulting from a maneuver that did not involve the back, and similar amplification of pain involved with light

touches to the skin on plaintiff's back. Dr. Todd also noted that the pain reported by plaintiff in his left leg did not correspond to any level of his spine.

Dr. Todd's review of the 2016 MRI of plaintiff's cervical spine showed multilevel disc desiccation, meaning that the discs appear to have lost some of their water content. Plaintiff had also developed bone spurs. Plaintiff's lumbar spine was slightly desiccated at L5-S1, and Dr. Todd saw protrusions or bulge of disc material with a tear in the outer covering of the disc that was in contact with the S1 nerve root. He opined that that the 2017 MRI images were very similar to the 2016 images.

Dr. Todd described the findings of the MRIs as being degenerative in nature, and opined that "more likely than not, the findings pre-dated the accident in question."[2] In support of this conclusion, Dr. Todd explained that bone spurs form because of changes and stresses around a disc over time. He estimated that 30-40 percent of the asymptomatic population in plaintiff's age range have the sort of pathology that is shown in plaintiff's cervical films. He also saw minor arthritis in some of plaintiff's joints, and said that annular tears are not uncommon and occur as part of the degenerative process. Dr. Todd believes that plaintiff's conditions pre-existed the accident, but that accident caused the conditions to become symptomatic. He disagreed with Dr. Liechty's recommendation for fusion surgeries, and said that he had serious concerns about the surgeries offered to plaintiff.

On cross examination, Dr. Todd explained that he was not provided with any of plaintiff's medical records from before the accident, and there is no objective medical data that shows plaintiff's symptoms began because of this accident. Dr.

_____

[2] At that time, plaintiff's counsel requested a bench conference, at which time he argued that Dr. Todd was testifying beyond what was in his report. Defense counsel responded that Dr. Todd had mentioned these finding in the report, using the language "Exacerbation of his very minor degenerative findings in his cervical spine." This testimony forms the basis of plaintiff's second assignment of error.

Todd clarified that any assessment made of plaintiff was based solely on plaintiff's own assertions.

### *Dr. Peter Liechty*

The video deposition of Dr. Peter Liechty was played for the jury, but was not transcribed for the record. A transcript from Dr. Liechty's deposition does not otherwise appear in the record. The record does contain a three page summary of plaintiff's evaluation sent from Dr. Liechty to plaintiff's counsel.[3] The letter stated, in relevant part, Dr. Liechty's conclusions that the rear-end collision more likely than not caused plaintiff's pain and that "surgical intervention" offered plaintiff "the definitive treatment option."

## ASSIGNMENTS OF ERROR

1. The jury erred in finding that plaintiff was not injured as a result of the October 16, 2015 accident.

2. The trial court erred in allowing the defendants' medical expert to testify about new expert opinions regarding causation, which were not contained in his La. C.C.P. art. 1465 detailed written report.

3. The trial court erred in denying plaintiff's motion for judgment notwithstanding the verdict, in the alternative, for new trial and, alternatively, for additur.

## LAW AND ANALYSIS

In his first assignment of error, plaintiff contends that the jury erred in finding that he was not injured in the October 16, 2015 accident.

Whether an accident caused a person's injuries is a question of fact which should not be reversed on appeal absent manifest error. *Housley v. Cerise*, 579 So.2d 973, 979 (La.1991). Louisiana jurisprudence has also established that when a person was in good health prior to an accident, and symptoms appear after the accident, that person's injuries are presumed to have resulted from the accident. *Bernard v. Hartford Insurance C*o., 09-71 (La. App. 3 Cir. 6/3/09), 12 So.3d 1098,

---

[3] The exhibit is identified in the record as "Plaintiff 1D In Globo."

1100-01, *writ denied*, 09-1524 (La.10/9/09), 18 So.3d 1285. That presumption does not apply and/or is overcome should the jury conclude the plaintiff was not credible and the claimed injuries were not caused by the accident. *Dore v. Mitsui Sumitomo Ins., USA, Inc.*, 12-875 (La. App. 3 Cir. 5/22/13), 117 So.3d 231, 235, *writ denied*, 13-1953 (La. 11/8/13), 125 So.3d 1094

The finding reached by the jury, that plaintiff did not sustain injuries from the accident, is a finding of fact. The standard of review for a factual finding by a jury is articulated in *Rosell v. ESCO*, 549 So.2d 840 (La.1989). In that case the Louisiana Supreme Court stated that it is well settled that an appellate court may set aside a factual finding of a trial court or a jury only where the finding was based on a "manifest error" or was "clearly wrong." *Id*. at 844. Further, where there is a conflict in the testimony, a trial court's or a jury's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal, even though the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court or the jury. *Id*. Finally, where there are two permissible views of the evidence, the trial court's or the jury's choice between them cannot be manifestly erroneous or clearly wrong. *Id.* See also *Williams v. Walgreen Louisiana Co.*, 14-716 (La. App. 5 Cir. 2/25/15), 168 So.3d 812, 828, *writ denied sub nom. Williams v. Walgreens Louisiana Co.*, 15-0610 (La. 6/1/15), 171 So.3d 262, *and writ denied sub nom. Williams v. Walgreens Louisiana Co.*, 15-0613 (La. 6/1/15), 171 So.3d 262.

In the instant matter, plaintiff contended that he sustained various injuries as a result of the accident on October 16, 2015. However, the trier of fact is not bound to accept a plaintiff's perception, or any other witness' perception, of the nature and extent of his injuries. *Ladner v. Gov't Employees' Insurance Co.*, 08-0323 (La. App. 4 Cir. 10/8/08), 992 So.2d 1098, 1102, *writ denied*, 08–2864 (La.2/6/09), 999 So.2d 783. At trial, plaintiff's claim that he had not been in a

prior accident was shown to be false. The jury was presented with photographs of the damage to the back of plaintiff's vehicle, which appeared to be minimal. Plaintiff testified that he reported to work in the weeks following the accident and sought out legal counsel before receiving a medical evaluation. There was evidence that conservative treatment helped plaintiff's symptoms, which plaintiff denied. Plaintiff chose not to pursue other conservative treatments as an alternative to surgery. Testimony from several doctors who had treated and evaluated plaintiff over time demonstrated that some of plaintiff's complaints of pain were exaggerated and not consistent with the injuries he claimed to have. Medical testimony also included opinions that plaintiff's complaints were not accident related, but instead were degenerative in nature and, more likely than not, existed before the accident.

Based on our review of the record, we cannot say that the jury was clearly wrong in finding that plaintiff was not injured as a result of the accident. The jury made a determination that one view of the evidence was more credible than the other, and we are not permitted to disturb reasonable evaluations of credibility and reasonable inferences of fact on appeal. Therefore, we must uphold the jury's findings of fact in this case.

### Second Assignment of Error

In his second assignment of error, plaintiff contends that the trial court erred in allowing Dr. Todd, an expert retained by defendant, to give an opinion regarding causation of plaintiff's alleged injuries as pre-existing the accident, which he argues was not contained in his La. C.C.P. art. 1465 detailed written report. Plaintiff claims that, by allowing Dr. Todd to present a new theory of causation at trial, his case was unfairly prejudiced.

The record shows that plaintiff's counsel requested a bench conference to assert that Dr. Todd was raising a new theory of causation in his trial testimony.

The trial court disagreed with plaintiff's characterization of the testimony as a new theory, and cited to specific language in Dr. Todd's report where he makes reference to plaintiff's pre-existing or degenerative changes.

THE COURT:

But it says that there's an exacerbation of minor degenerative changes. I mean, that's -- that is the --
. . .

Exacerbation indicates that there has been some aggravation of something that was already present.

Plaintiff's counsel appeared to withdraw any challenge after being assured by the trial court that he would be able to raise the issue during the cross-examination of Dr. Todd.

MR. REDMANN [PLAINTIFF'S COUNSEL]:

It's stunning that he can say that those words mean that what I meant was he wasn't hurt in this accident. I don't know how to fix it. I mean, the words came out of his mouth.

MR. GAUDIN [DEFENSE COUNSEL]:

You can cross-examine on these issues.

THE COURT:

Okay. I'll allow you to cross-examine him on that, okay?

MR. REDMANN:

All right. I'd like -- Maybe after the jury breaks I can proffer the report and put an objection on the record.

Plaintiff's counsel did, in fact, specifically ask Dr. Todd on cross-examination about his observation that plaintiff had a condition that pre-existed before the accident.

MR. REDMANN:

Okay. Now, I got kind of thrown for a loop because I didn't understand it from reading your report, but you indicated that the disc in his neck and the disc in his back that are -- that have issues, that showed up, and that Dr. Liechty talked about in his court deposition, they may have been bad and, in your opinion, they had problems even before the accident; but what's

significant, if I understood your testimony is, these discs were not generating any symptoms.

It does not appear from the record that plaintiff's counsel later made a formal objection to Dr. Todd's testimony regarding a pre-exiting injury, nor did counsel proffer a copy of Dr. Todd's report into evidence.

In order to preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence and state the reasons for the objection. *Matthews v. Breaux*, 04-958 (La. App. 5 Cir. 2/15/05), 896 So.2d 1146, 1150. The failure to make a contemporaneous objection in the trial court waives the right of a party to complain about the ruling on appeal. *Hyland v. American Guarantee and Liability Insurance Company*, 04-305 (La. App. 5 Cir. 9/28/04), 885 So.2d 30, 34. Here, while counsel for plaintiff arguably objected to Dr. Todd's testimony by requesting a bench conference, it appears that the objection was withdrawn when counsel cross-examined Dr. Todd on the same subject matter. Further, even if we deem this issue to be preserved, Dr. Todd's report was not proffered into evidence and preserved pursuant to La. C.C.P. art. 1636. Accordingly, we have no basis upon which to consider plaintiff's argument.

We therefore find this assignment to be without merit.

***Third Assignment of Error***

In his third assignment of error, plaintiff argues that the trial court erred in denying his motion for judgment notwithstanding the verdict (JNOV), motion for new trial and, alternatively, for additur.

*JNOV*

The standard to be used in determining whether a JNOV has been properly granted was set forth in *Davis v. Wal-Mart Stores, Inc.*, 00-0445 (La.11/28/00), 774 So.2d 84, 89:

> A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that

reasonable jurors could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.

The standard of review for a JNOV on appeal is a two-part inquiry. In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether or not to grant the motion. After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review. *Id.* If reasonable people could have arrived at the same verdict, given the evidence presented to the jury, then the JNOV is improper. *Miller v. PNK*, 11–216 (La. App. 3 Cir. 10/5/11), 76 So.3d 122, 130 (*citing Anderson v. New Orleans Pub. Serv., Inc.*, 583 So.2d 829 (La.1991)).

As we have already reviewed the jury's findings and found no manifest error, we cannot say that the jury's verdict as finally rendered was unreasonable or clearly contrary to the law and the evidence. Accordingly, we find no error in the trial court's denial of plaintiff's judgment notwithstanding the verdict.

*Motion for New Trial*

The standard of review for the denial of a motion for new trial is abuse of discretion. *Davis v. Coregis Ins. Co.*, 00-475 (La. App. 3 Cir. 12/27/00), 789 So.2d 7, *writ denied*, 01-292 (La. 3/30/01), 788 So.2d 1192.  La C.C.P. art. 1972 states, in relevant part:

A new trial shall be granted, upon contradictory motion of any party, in the following cases:

> (1) When the verdict or judgment appears clearly contrary to the law and the evidence.

For the reasons previously stated, we find no abuse of discretion in the trial court's ruling that the evidence presented at trial supported the jury's verdict, and that the verdict is not contrary to law.

*Additur*

With respect to plaintiff's complaint regarding the denial of his motion for additur, plaintiff has failed to brief this assignment of error on appeal. All assignments of error must be briefed and the appellate court may consider as abandoned any assigned error that has not been briefed. Accordingly, we find plaintiff has abandoned this assignment of error, and therefore decline to consider the merits of this assignment. La. U.R.C.A. 2-12.4; *Johnson v. Spurlock*, 07-949 (La. App. 5 Cir. 5/27/08), 986 So.2d 724, 729, *writ denied*, 08-1400 (La. 7/25/08), 986 So.2d 670 (citing *Silbernagel v. Silbernagel*, 06-879 (La. App. 5 Cir. 4/11/07), 958 So.2d 13, 20).

## WRIT 19-C-473

After the completion of trial, on May 16, 2019, defendants filed a motion to tax costs against plaintiff in the amount of $53,586.53[4] pursuant to La. C.C.P. art. 1920, which provides:

> Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
> Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.

In opposing the motion to tax costs, plaintiff argued that he had been granted *forma pauperis* status on June 11, 2019, and that taxing costs against him under that circumstance would be inequitable, especially considering the evidence of his

---

[4] This amount represents defendant's total claim for expert fees, depositions, medical records and court costs.

injury presented at trial. Plaintiff further argued that the expert fees were excessive, specifically for defendants' vocational rehabilitationist, Barney Hegwood, who billed over $22,000.

A hearing on the motion was held on August 7, 2019, at the conclusion of which the trial court granted defendants' motion, awarding costs against plaintiff in the amount of $25,000. A transcript of the hearing is not included in the writ application or in the record on appeal; however, the trial court stated in its September 19, 2019 written reasons for judgment:

> After reviewing the evidence submitted by defendants, in particular the invoice from Barney Hegwood, the court exercised its discretion under La. C.C.P. article 1920 and reduced the total costs recoverable by defendants to $25,000.00. The court finds this amount is equitable. This matter took four days to try in front of a jury. Defendants incurred considerable costs defending plaintiff's allegations, and the jury found plaintiff suffered no injury as a result of the accident. Considering this verdict, the court finds it is inequitable to make defendants bear all costs of the defense.
> Furthermore, plaintiff did not proceed to trial in forma pauperis. These trial costs were incurred prior to plaintiff applying for this status. Plaintiff did not apply for this status until June 7, 2019, almost two months after trial and after defendants submitted their motion to tax costs.

Plaintiff filed a timely writ application with this Court to challenge the trial court's ruling. In an order dated November 18, 2019, plaintiff's writ application was consolidated with his pending appeal, based upon a finding that the issues were interrelated.

LSA–C.C. Art. 1920 affords the trial court broad discretion in assessing court costs and allows the trial court to render judgment for costs against any party as it may consider equitable. *Earles v. Ahlstedt*, 591 So.2d 741 (La. App. 1st Cir.1991). A trial court's assessment of costs can be reversed by an appellate court only upon a showing of abuse of discretion. *State v. Nicholls College Foundation*, 592 So.2d 419 (La. App. 1st Cir.1991), *writ denied*, 593 So.2d 651 (La.1992). After a review of the application, and on the showing made, we find no abuse of

discretion in the trial court's assessment of costs in this matter. Accordingly, we deny relief.

## **DECREE**

For the reasons assigned, we affirm the jury's verdict regarding damages and find no error in the trial court's denial of plaintiff's judgment notwithstanding the verdict and motion for new trial. We further find no abuse of discretion in the trial court's assessment of costs against plaintiff.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MAY 28, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 19-CA-520
### C/W 19-C-473

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
EDWARD L. MORENO (APPELLANT)      KELLY S. RIZZO (APPELLANT)      ANDRE' C. GAUDIN (APPELLEE)

**MAILED**
JOHN W. REDMANN (ATTORNEY)        KERNAN A. HAND (ATTORNEY)       RYAN D. KELLEY (ATTORNEY)
TRAVIS J. CAUSEY, JR. (ATTORNEY)   4220 SAINT ELIZABETH DRIVE      5213 AIRLINE DRIVE
CHRISTIAN GALLEGUILLOS (ATTORNEY)  KENNER, LA 70065                METAIRIE, LA 70001
1101 WESTBANK EXPRESSWAY
GRETNA, LA 70053